[No. B085384. Second Dist., Div. Six. May 25, 1995.]

MARK STEWART, Plaintiff and Respondent, v.
CITY OF PISMO BEACH et al., Defendants and Appellants.

**COUNSEL**

Borton, Petrini & Conron and Robert J. Gundert for Defendants and Appellants.

Gayle E. Peron for Plaintiff and Respondent.

**OPINION**

**YEGAN, J.**—The City of Pismo Beach and its city council (City) appeal from a trial court order overruling their demurrer to and granting a petition

for writ of mandate filed by former City Police Officer Mark Stewart (Stewart). The writ compels the City to provide Stewart with a defense, i.e., separate counsel, in a federal civil rights action filed against him, the City, and several other City police officers (the federal action). Because we conclude that Government Code section 995.2, subdivision (c) allows the City to withdraw from the defense of Stewart and that the City is not estopped from doing so, we reverse.[1]

## Facts

Stewart was a City police officer from June 1991 until October 1993. While employed by the City, Stewart participated in one of two undercover investigations conducted by the City's police department concerning narcotics activity at Harry's Cocktail Lounge (Harry's). Six patrons of Harry's were arrested as a result of these investigations. The City shared the results of the investigations with the California Department of Alcohol and Beverage Control (ABC). After receiving this information, the ABC began proceedings to revoke Harry's liquor license. In addition, the City considered revoking the dance license it had issued to Harry's.[2]

In May 1993, the owners of Harry's (plaintiffs) filed the federal action. Their complaint alleges that the investigations and licensing proceedings were the product of selective law enforcement and therefore violated their rights to due process and equal protection. Plaintiffs named as defendants the City, its city council, its chief of police, Stewart and other police officers involved in the investigations. Attorneys Martin Mayer and Robert Jagiello were retained by the City to represent it and its employees, including Stewart, in the federal action.

In October 1993, Stewart voluntarily resigned from his position as a City police officer. The City continued, however, to defend him in the federal action. In December 1993, an investigator employed by the owners of Harry's requested an interview with Stewart. Without notifying Jagiello or any other person affiliated with the City, Stewart granted the interview.

As a result of the interview, Stewart signed a declaration stating that: (a) he had no training in conducting an undercover drug investigation prior to the investigation of Harry's; (b) he wanted to investigate other bars in the City but was instructed to concentrate his efforts on Harry's; (c) his superiors pressured him to lie in his police report and to omit facts which were favorable to Harry's; (d) the chief of police instructed Stewart to lie during

---

[1]All statutory references are to this code unless otherwise stated.

[2]The record does not indicate whether either license was actually revoked.

a city council meeting concerning Harry's; (e) the chief of police "wanted Harry's . . . to be closed and, through enforcement of the law relative to Harry's sought to obtain that end"; and (f) "Harry's . . . was treated differently than any other bar in [the City] by the Chief [of Police]." In exchange for his truthful testimony concerning these matters, the plaintiffs agreed to dismiss their claims against Stewart in his individual capacity.

The City and its attorney, Jagiello, were understandably upset when they learned that Stewart was cooperating with the plaintiffs. Jagiello informed Stewart that the City would no longer defend or indemnify him because Stewart had failed to cooperate in his own defense and because his capitulation to Harry's created a conflict of interest.[3] Stewart asked the City to retain separate counsel to represent him. When the City refused, Stewart filed the petition for writ of mandate requiring the City to do so.

The City demurred to the petition, arguing that sections 825 and 995.2 allowed it to withdraw its defense of Stewart because Stewart created a conflict of interest by failing to cooperate in the defense, and because Stewart was no longer in need of a defense. Stewart opposed the demurrer. While he admitted that his conduct created a conflict between himself and the City's attorneys, Stewart claimed he had no conflict with the City itself. Accordingly, Stewart contended, there was no conflict of interest which would justify the City's withdrawing its defense.

After a hearing, the trial court overruled the City's demurrer and granted Stewart's petition. It found that the City was "estopped from denying a defense to [Stewart], since a defense was previously provided and then discontinued." The City then filed this appeal.

### Standard of Review

■ The City's demurrer admits the truth of all allegations contained in Stewart's petition. Like the trial court, we are asked to decide only issues of law. (*Gray* v. *Board of Supervisors* (1957) 154 Cal.App.2d 700 [316 P.2d 678].) Thus, the trial court's legal conclusions are subject to de novo review on appeal. (*Rudd* v. *California Casualty General Ins. Co.* (1990) 219 Cal.App.3d 948, 951 [268 Cal.Rptr. 624].)

---

[3]Before withdrawing as Stewart's counsel, Jagiello also made a series of unflattering public statements concerning Stewart's veracity and requested that the local district attorney consider charging Stewart with perjury. In response to a motion filed by Stewart and the plaintiffs, the federal district court disqualified Jagiello from representing any of the remaining defendants in the federal action.

## Discussion

Section 995 requires the City to "provide for the defense of any civil action or proceeding brought against [an employee or former employee], in his official or individual capacity or both, on account of an act or omission in the scope of his employment . . . ." ■ The duty to provide employees with a defense in civil actions is mandatory, unless one of the exceptions included in sections 995.2 and 995.4 exists. (*Sinclair* v. *Arnebergh* (1964) 224 Cal.App.2d 595, 598 [36 Cal.Rptr. 810].) The exception relevant here allows the City to discontinue the defense, "[i]f an actual and specific conflict of interest becomes apparent . . . ." (§ 995.2, subd. (c).) A " 'specific conflict of interest' " is, "a conflict of interest or an adverse or pecuniary interest, as specified by statute or by a rule or regulation of the public entity." (§ 995.2, subd. (a)(3).)[4]

■ Stewart's cooperation with the plaintiffs in the federal action created an "actual and specific conflict of interest" between Stewart and the City. Before Stewart began to cooperate with the plaintiffs, his personal interests and those of the City were identical. The City had every reason to vigorously defend Stewart because its own liability hinged, at least in part, upon whether Stewart's conduct violated the plaintiffs' civil rights. Because the City was providing Stewart with a defense and had agreed that his alleged conduct was within the scope of his employment, the City would have been obligated to indemnify Stewart for any judgment awarded against him, including one against Stewart in his individual capacity. (§ 825.)

Now that Stewart has cooperated with the plaintiffs, his interests are diametrically opposed to the City's. The plaintiffs have agreed to dismiss their claims against Stewart if he testifies truthfully concerning the information related in his declaration. That testimony is directly contrary to the position taken by the City in the lawsuit. Stewart compromises the City by testifying consistently with his declaration. He risks his own position if he contradicts his declaration. To successfully defend its remaining clients, the City will be required to discredit Stewart. In our view Stewart and the City now have adverse interests in the federal action as a matter of law.

Stewart appears to acknowledge that this conflict of interest exists. He contends, however, that the conflict does not allow the City to cease paying

---

[4]The City also contends that it is entitled to withdraw its defense under section 995.2, subdivision (a)(2), because Stewart's declaration is tantamount to an admission that he committed "actual fraud" by filing a false police report and lying to the city council. Our decision on the conflict of interest issue makes it unnecessary for us, at this time, to decide whether Stewart's alleged fraud provides an additional basis for the City's withdrawal from his defense.

for his legal expenses because the conflict at issue is not "specified by statute or by a rule or regulation of the public entity." (§ 995.2, subd. (a)(3).) We disagree.

Section 825.6, subdivision (a) allows the City to seek indemnity against Stewart only if he "willfully fail[s] or refuse[s] to reasonably cooperate in good faith in the defense conducted by the public entity[,]" or if his conduct was motivated by "actual fraud, corruption or actual malice . . . ." (§ 825.6, subd. (a).) So long as Stewart cooperated with the City-provided defense, the City had no incentive to develop the facts necessary to prove that he committed fraud and therefore had no basis for seeking indemnity from him. Stewart's refusal to cooperate in his own defense thus gives the City a claim for indemnification which it otherwise would not have had.

Even if the conflict is not "specified by statute . . . ," it is well settled that the "language of a statute is not to be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend. [Citations.]" (*Los Angeles Police Protective League* v. *City of Los Angeles* (1994) 27 Cal.App.4th 168, 178 [32 Cal.Rptr.2d 574].) Section 995.2, subdivision (c) appears to have been intended to allow a public entity to withdraw from the defense of an employee in conflict of interest situations because it is unreasonable to require a public entity to finance litigation directed against it. Here, Stewart is essentially asking the City to pay for a lawyer to help Stewart (and the plaintiffs) dig the City's grave in the federal action. We think this is exactly the result subdivision (c) was intended to avoid.

Nor is there any ground for here applying the doctrine of estoppel against the City. ▪ The elements of a claim of estoppel against the government are: " '(1) the party to be estopped must be apprised of the facts; [¶] (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; [¶] (3) the other party must be ignorant of the true state of facts; and [¶] (4) he must rely upon the conduct to his injury.' (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].) [¶] The fifth element requires the plaintiff to demonstrate that the injury to his personal interests if the government is not estopped exceeds the injury to the public interest if the government is estopped. . . ." (*La Canada Flintridge Development Corp.* v. *Department of Transportation* (1985) 166 Cal.App.3d 206, 219 [212 Cal.Rptr. 334]; see also *Lusardi Construction Co.* v. *Aubry* (1992) 1 Cal.4th 976, 994-95 [4 Cal.Rptr.2d 837, 824 P.2d 643].) In addition, estoppel will not be applied against the government if to do so would effectively "nullify a strong rule of policy adopted for the benefit of the public." (*Lusardi Construction Co.* v. *Aubry, supra,* 1 Cal.4th at pp. 994-995.)

■   None of these necessary elements are supported by the record. There is no evidence that the City knew, when it began to defend Stewart, that Stewart was aware of facts which would require him to testify favorably toward plaintiffs or that Stewart intended to do so. Stewart makes no claim that he was ignorant of the "true" facts; indeed, he is the only person who could have known those facts. Stewart could not possibly have relied to his detriment on the defense provided by the City. Far from relying on that defense, he personally negotiated a favorable settlement without even consulting with his attorney.

Nor can Stewart demonstrate that he will sustain more injury if the City refuses to pay for his defense than the City will sustain if it is required to do so. Stewart has already insulated himself from personal liability. On the present record, it is questionable whether he requires legal representation at all. If he retains his own counsel, Stewart may be entitled to recover his attorney fees and costs from the City pursuant to section 996.4.[5] The application of estoppel on these facts would essentially nullify the public policy, expressed in section 995.2, subdivision (c), against requiring a public entity to pay for the defense of a former employee whose personal interests are in conflict with those of the public entity.

■   Finally, the trial court's rationale that the City could not withdraw from providing a defense, previously given, is at variance with section 995.2, subdivision (c), which provides: "If an actual and specific conflict of interest becomes apparent subsequent to the 20-day period following the employee's written request for defense, nothing herein shall prevent the public entity from refusing to provide further defense to the employee. The public entity shall inform the employee of the reason for the refusal to provide further defense."

## Conclusion

Section 995.2, subdivision (c) allows the City to refuse to provide a further defense to Stewart because, by cooperating with the city's opponents in the federal action, Stewart has created a conflict of interest between

---

[5]Section 996.4 provides: "If after request a public entity fails or refuses to provide an employee or former employee with a defense against a civil action or proceeding brought against him and the employee retains his own counsel to defend the action or proceeding, he is entitled to recover from the public entity such reasonable attorney's fees, costs and expenses as are necessarily incurred by him in defending the action or proceeding if the action or proceeding arose out of an act or omission in the scope of his employment as an employee of the public entity, but he is not entitled to such reimbursement if the public entity establishes (a) that he acted or failed to act because of actual fraud, corruption or actual malice, or (b) that the action or proceeding is one described in Section 995.4."

himself and the City. None of the facts alleged in Stewart's petition provide a basis for estoppel against the City.

The order and judgment overruling demurrer and granting petition for issuance of writ of mandate is reversed. The trial court is directed to enter an order sustaining the demurrer without leave to amend and denying the writ petition. Costs to appellants.

Stone (S. J.), P. J., and Gilbert, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 31, 1995.