[No. E029742. Fourth Dist., Div. Two. Jan. 24, 2002.]

CITY OF HUNTINGTON BEACH, Plaintiff, Cross-defendant and Respondent, v.
THE PETERSEN LAW FIRM et al., Defendants, Cross-complainants and Appellants;
THOMAS FEELEY, Cross-defendant and Respondent.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts B. and C.

**COUNSEL**

The Petersen Law Firm, Gregory G. Petersen and Larry J. Roberts for Defendants, Cross-complainants and Appellants.

Woodruff, Spradlin & Smart, Thomas F. Nixon and M. Lois Bobak for Plaintiff, Cross-defendant and Respondent.

Robinson, Di Lando & Whitaker, Michael A. Di Lando and Mark Kane for Cross-defendant and Respondent.

**OPINION**

**McKINSTER, Acting P. J.**—After a city and several of its employees were sued in tort, the city retained counsel to jointly represent the city and the employees. The employees insisted that the city was obligated to pay for defense counsel for the employees separate from counsel retained to defend the city. The city refused and sued for declaratory relief to establish that it was not obligated to provide its employees with a separate defense. The employees appeal from a judgment in favor of the city.

## PROCEDURAL BACKGROUND

### A. *The Two Underlying Actions.*

In September of 1996, Tony Nammari and others sued the City of Huntington Beach (City) and several of its police officers, including Daryk Rowland and Mike Willett. (*Nammari v. City of Huntington Beach* (Super. Ct. Orange County, 1996, No. 769183); hereinafter *Nammari.*) The *Nammari* plaintiffs claimed compensatory and punitive damages for alleged violations of the plaintiffs' civil rights, a conspiracy to violate those rights, intentional infliction of emotional distress, negligence, false arrest, and a violation of Civil Code section 52.1.

The City retained outside legal counsel, Thomas Feeley, to jointly represent the City and the individual defendants, including Rowland and Willett, in *Nammari.* In October of 1996, the City advised Rowland and Willett of its retention of Feeley. Apparently, Feeley represented all the *Nammari* defendants until April of 1997. In April, Rowland and Willett advised the City that they did not consent to joint representation and executed substitutions of attorney by which they substituted The Petersen Law Firm (Petersen) as their counsel instead of Feeley.

Thereafter, Petersen demanded that the City pay the fees incurred in Petersen's defense of Rowland and Willett. The City refused.

Similarly, also in September of 1996, Heycha Ice and others sued the City and several of its police officers, including Tim Chambers, James McLean, and Rowland. (*Heycha Ice v. City of Huntington Beach* (C.D.Cal., No. SACV 96-510 AHS(EEx)); hereinafter *Ice.*) The *Ice* plaintiffs claimed compensatory and punitive damages for alleged violations of the plaintiffs' civil rights, assault and battery, intentional and negligent interference with contractual relations and prospective economic advantages, defamation, and intentional infliction of emotional distress.

The City retained outside legal counsel, Charles W. Mattheis of the law firm of Beam, Brobeck, and West, to jointly represent the City and the individual defendants, including Chambers, McLean, and Rowland. In October of 1996, the City advised Rowland and Willett of its retention of Mattheis. Mattheis represented all the *Ice* defendants until April of 1997. In April, Chambers, McLean, and Rowland executed substitutions of attorney by which they substituted Petersen as their counsel instead of Mattheis.

Thereafter, Petersen demanded that the City pay the fees incurred in Petersen's defense of Chambers, McLean, and Rowland in *Ice*. Once again, the City refused.

B. *The Instant Action.*

In response to Petersen's demands for payment of its fees, the City sued Petersen, Rowland, Willett, Chambers, and McLean in August of 1997, seeking a judicial declaration that the City was not obligated to pay Petersen for its representation of Rowland, Willett, Chambers, and McLean (collectively Officers) in *Nammari* and *Ice*. Rowland and Willett responded in part by cross-complaining against Feeley and the City, asserting claims for legal malpractice, negligent infliction of emotional distress, breach of contract, indemnity, fraudulent misrepresentation, conspiracy, and violation of civil rights.

In March of 1998, the City moved for summary adjudication of issues, asserting that it had no duty to pay for Petersen's services to Rowland and Willet in *Nammari*. The trial court granted the motion. The trial court subsequently reconsidered its ruling at the defendants' request but affirmed its decision to grant the motion for summary adjudication.

Meanwhile, the City moved for summary judgment or summary adjudication of issues. The trial court granted the motion for summary adjudication, finding that the City had no duty to pay for Petersen's representation of Rowland, Chambers, and McLean in *Ice*. On the court's own motion, it then dismissed whatever issues remained unadjudicated in the City's complaint for declaratory relief pursuant to Code of Civil Procedure section 1061, dismissed the cross-complaint, and entered judgment in favor of the City.

The defendants appeal from that judgment.

CONTENTIONS

In contending that the trial court erred by granting summary adjudication against them, the defendants argue that the Officers were entitled to retain

separate counsel at the City's expense (1) because there were potential conflicts of interest between the Officers and the City that the Officers had not waived, and (2) because there were actual conflicts of interest between the Officers and the City that could not be waived. They also contend that the trial court erred by dismissing the cross-complaint against Feeley and the City.

ANALYSIS

A. *The Officers Were Not Entitled to Separate Representation at the City's Expense.*

"[U]pon request of an employee, or former employee a public entity shall provide for the defense of any civil action or proceeding brought against him, in his official or individual capacity or both, on account of an act or omission in the scope of his employment as an employee of the public entity." (Gov. Code, § 995.)[1] The public entity may satisfy that duty to provide for a defense either "by its own attorney or by employing other counsel for this purpose or by purchasing insurance which requires that the insurer provide the defense." (§ 996.)

However, that duty is not unlimited. There is no duty to defend if the employee's act or omission was not within the scope of the employee's employment. (§ 995.2, subd. (a)(1).) Nor does the duty apply to actions against the employee arising out of the employee's actual fraud, corruption, or actual malice. (*Id.* at subd. (a)(2).) And not surprisingly, when it is the public entity that brings the action or proceeding against the employee, the public entity has no duty to provide the defense to its own action. (§ 995.4.)

Another exception to the duty to defend exists when the public entity determines that "[t]he defense of the action or proceeding by the public entity would create a specific conflict of interest between the public entity and the employee or former employee. For the purposes of this section, 'specific conflict of interest' means a conflict of interest. or an adverse or pecuniary interest, as specified by statute or by a rule or regulation of the public entity." (§ 995.2, subd. (a)(3).) If an "actual and specific conflict of interest becomes apparent" after the public entity has already begun to provide a defense, the public entity may refuse to provide any further defense. (*Id.* at subd. (c).)

If a public entity fails or refuses to comply with its duty to provide a defense—for example, because it erroneously believes that one of the exceptions applies—and the employee retains his or her own counsel to defend the

---

[1] Unless specified otherwise, all further section references are to the Government Code.

action, the employee is entitled to recover from the public entity the reasonable attorney's fees and other expenses incurred in presenting the defense. (§ 996.4.)

Here, the City did not refuse to defend the Officers. To the contrary, the City defended the Officers and offered to continue to defend them, albeit with the same counsel retained to defend the City itself. The Officers declined that offer on the ground that there were actual or potential conflicts of interest between themselves and the City that required separate representation. By failing to retain separate counsel, they argue, the City failed to comply with its duty to defend.

Those circumstances and arguments present two issues: (1) when a public entity and one of its employees are sued and there is an actual or potential conflict of interest between the public entity and its employee, does the employee have the right to force the public entity to hire separate counsel to defend the employee rather than using the same attorney who is defending the public entity? (2) and if so, was there an actual or potential conflict of interest between the City and the Officers at the time the Officers demanded a separate defense?

As we shall explain, even assuming that there were either actual or potential conflicts of interest between the City and the Officers, the City cannot be forced to pay for a separate defense counsel for the Officers.

The answer is most obvious when considering an employee's rights and a public entity's obligations in the event of an actual conflict of interest between them. Under those circumstances, the public entity need not provide any defense whatsoever. (§ 995.2, subd. (a)(3); see, e.g., *Stewart v. City of Pismo Beach* (1995) 35 Cal.App.4th 1600, 1605-1606 [42 Cal.Rptr.2d 382].) The public entity's right to refuse to provide any defense at all necessarily includes the right to refuse to provide a separate defense.

By contrast, when the conflict of interest is only potential rather than actual, the public entity remains obligated to provide a defense. Although subdivision (a)(3) of section 995.2 does not distinguish between actual and potential conflicts of interest when describing a public entity's right to refuse to provide a defense to its employees, subdivision (c) of that section makes clear that a public entity is relieved of its duty to defend only when an "actual" conflict of interest exists.

But a public entity has *no* obligation to provide that employee with a *separate* defense. The liability of public entities is entirely statutory. (§ 815,

subd. (a).) Although public entities are statutorily obligated to defend their employees (§ 995), even if a potential conflict of interest exists (§ 995.2), no statute specifies that a public entity is liable for the cost of providing an entirely separate defense for an employee instead of a joint defense of the public entity and the employee (see *DeGrassi v. City of Glendora* (9th Cir. 2000) 207 F.3d 636, 643).[2]

Nor does decisional law support liability to provide a separate defense. To the contrary, the courts have expressly refused to establish "a judicially declared right to independent counsel . . . ." (*Laws v. County of San Diego* (1990) 219 Cal.App.3d 189, 192 [267 Cal.Rptr. 921].) Because of the potentially enormous fiscal impact on state and local governments, the importance of the relationship between public employers and their employees (*id.* at p. 201), and the extensive statutory scheme already in place, such a broad extension of existing law should be made by the Legislature, not the courts (*id.* at p. 192).

A duty to provide a separate defense cannot be implied from the rule that an attorney representing multiple parties with potentially conflicting interests must obtain their written consent to joint representation. (Rules Prof. Conduct, rule 3-310(C)(1).) If there is a potential conflict of interest that the public entity is willing to waive, the employee is put to a choice. The employee may join the public entity in waiving the potential conflict and accept the public entity's offer of a joint defense. Or the employee may refuse to waive the potential conflict of interest, decline the proffered joint representation, and retain separate representation at the employee's own expense.[3]

In arguing that the employee should not have to bear the expense of the separate representation, the defendants reason that the employee should not be required to consider the economic consequences of a refusal to consent to joint representation because that "economic coercion" would undermine the voluntariness of any consent. They are mistaken. Separate representation is

---

[2]We note that, even in the context of an insured and its insurer, a potential conflict of interest is not enough to require the insurer to retain separate counsel for the insured. "The conflict must be significant, not merely theoretical, actual, not merely potential." (*Dynamic Concepts, Inc. v. Truck Ins. Exchange* (1998) 61 Cal.App.4th 999, 1007 [71 Cal.Rptr.2d 882].)

[3]Arguably, if the public entity is not willing to waive the potential conflict, it may be obligated to provide a separate defense. However, we do not consider that possibility here. There is no evidence that the City refused to waive any potential conflict of interest. To the contrary, by providing a joint representation without any reservation of rights, it indicated its willingness to accept any potential conflicts.

inherently more expensive than joint representation. Every litigant—whether individual or corporate, public or private—who is faced with the question of whether to consent to joint representation must weigh the cost of separate representation against the benefit of avoiding potential conflicts of interest. Nothing in the statutory scheme suggests that public employees should be insulated from the real-world consequences of their decision to insist upon separate representation.

The defendants concede that the City "complied with the letter of its statutory obligations" to provide a defense, but they insist that the defense provided was "functionally ineffective." In particular, they contend that the attorney hired by the City failed to comply with certain ethical obligations owed by the attorney to his clients (Rules Prof. Conduct, rule 3-310(F)(2) & (3)) and that the City's failure to provide "ethically qualified" defense counsel constitutes a material breach of the City's duty to provide a defense, entitling the Officers to recover the cost of hiring separate counsel.

We are not persuaded. The professional duties to which the defendants refer are owed by the attorney, not by the City. Absent evidence either (1) that the City was interfering with the attorney's performance of those obligations or (2) that the Officers informed the City of the attorney's ethical deficiencies and asked the City to obtain different counsel that would comply with those obligations but the City refused to do so, there is no reason that an alleged breach of the attorney's duties to his clients should constitute a breach of the City's obligation to provide a defense.

In summary, we conclude that, regardless of whether the conflicts of interest were actual or merely potential, the City was not obligated to provide the Officers with a separate defense. Accordingly, the trial court did not err by ruling that the City was not obligated to reimburse the expenses incurred by Petersen in defending the Officers in either *Ice* or *Nammari*. That portion of the judgment granting summary adjudication of those claims must be affirmed.

B., C.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

*See footnote, *ante*, page 562.

## DISPOSITION

The judgment is affirmed. The City and Feeley shall recover their costs on appeal.

Ward, J., and Gaut, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 10, 2002. George, C. J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.