[Civ. No. 18334. Third Dist. Mar. 26, 1980.]

CHARLES K. VIELEHR, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Turner & Sullivan, Robert J. Sullivan and Mary A. O'Gara for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Stephen J. Egan, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**REGAN, Acting P. J.**—This is a class action involving the validity of a 1968 legislative enactment which affected the amount of interest paid to members of the Public Employees Retirement System (PERS) who withdraw their PERS contributions in a lump sum upon leaving public service before retirement.

Prior to December 1, 1968, Government Code section 20031 provided for the payment of interest to a withdrawing member up to the precise date of withdrawal. In 1968 Assembly Bill No. 508 (Stats. 1968, ch. 941, operative Dec. 1, 1968) was enacted, section 1 of which amended Government Code section 20031 to provide for interest on

PERS refunds only up to and including June 30 of the fiscal year preceding that in which the refund is accomplished.

The basic issue is whether the legislation (Assem. Bill No. 508) violated the "obligation of contracts" provisions of the federal and state Constitutions.[1] The trial court answered this question in the negative by granting defendant's motion for summary judgment and denying plaintiff's motion for summary judgment. Plaintiff's appeal is from the ensuing judgment in favor of defendant.

Plaintiff commenced work for the state on February 8, 1968, and thereby became a member of PERS, to which he contributed a percentage of his salary. At that time, as now, plaintiff had the right to withdraw his contributions should he leave state service other than by retirement. (Gov. Code, § 20652.) He also had the right to receive interest on any such withdrawal up to the date of the actual withdrawal. (Gov. Code, §§ 20029, 20030, 20031.)

On February 28, 1974, plaintiff resigned and requested PERS to refund his accumulated contributions. On March 22, 1974, he was sent a refund check in the amount of $1,281.05, which did not include interest on his contributions for the period after July 1, 1973. The amount he was "short" due to Assembly Bill No. 508 was $48.54. Plaintiff filed a claim with the State Board of Control on behalf of himself and others similarly situated requesting payment of interest to date of withdrawal on all refunds given to persons who were PERS members prior to December 1, 1968 (eff. date of Assem. Bill No. 508), and who withdraw their contributions thereafter on a day other than June 30 of any succeeding year. The claim was rejected by the board and this lawsuit followed.

■ Plaintiff contends the sums of money claimed by the members of the class are retirement benefits or rights and as such are "protected" against state interference by the contract clauses of the federal and state Constitutions. We disagree.

The argument asserts that the legislation impaired retirement benefits, and in so doing violated the contract clauses of the Constitutions,

---

[1]Article I, section 10, of the United States Constitution provides that "No State shall...pass any...law impairing the obligation of contracts ...." Article I, section 9, of the California Constitution also bars any legislative impairment of contract obligations.

since the impairment was not "materially related to the theory of a sound pension system and its successful operation." This argument is based on cases which have held that acts of public agencies which modify or change *vested contractual pension rights* are permissible, but only if they "bear some material relation to the theory of a pension system and its successful operation . . . ." (*Allen* v. *City of Long Beach* (1955) 45 Cal.2d 128, 131 [287 P.2d 765]; see also *Wallace* v. *City of Fresno* (1954) 42 Cal.2d 180, 185 [265 P.2d 884].)

We have no quarrel with the law as set forth by plaintiff when applied to a proper fact situation. However, the legislation in question, properly viewed, is not concerned with a *retirement* benefit or right. The funds on deposit in a PERS member's account can be returned to him, with interest, only when he leaves public employment other than by retirement. (Gov. Code, §§ 20390, 20393.) When he thus terminates employment he must make an election, as provided by statute, whether to have his contributions returned or leave them on deposit until he reaches the age of retirement, at which time he will be paid a pension. (Gov. Code, § 20393.) Should he elect to take his contributions, he leaves the system as a matter of law and ceases to be a member of PERS. (Gov. Code, § 20390.) He thus rejects any pension rights he had in PERS.

As we view that portion of Government Code section 20031, as amended by Assembly Bill No. 508, relating to refund of accumulated contributions to a PERS member leaving state service other than by retirement, the subject matter is *not* a retirement right. It is a right of public *employment*, not retirement. That is to say, a public employee has a statutory right to cancel or rescind any statutory right he has to retirement, and does so when he withdraws his accumulated contributions. He does such an act as an employee, not as a retiree.

An example of the distinction in the rights is seen in the case of *Miller* v. *State of California* (1977) 18 Cal.3d 808 [135 Cal.Rptr. 386, 557 P.2d 970], in which the plaintiff contended he had a vested contractual right to continue employment to the previous mandatory retirement age 70 and thereby to qualify for a larger monthly pension than he would get at the lower mandatory retirement age which had been enacted by the Legislature during his tenure. The court rejected his contention. The court stated, inter alia (at pp. 813-814), with respect to the contract clauses in the Constitutions: "[I]t is well settled in

California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law. [Citations.] Nor is any vested contractual right conferred on the public employee because he occupies a civil service position since it is equally well settled that '[t]he terms and conditions of civil service employment are fixed by statute and not by contract.' (*Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634, 641 [234 P.2d 981]; see also *Martin* v. *Henderson* (1953) 40 Cal.2d 583, 590-591 [255 P.2d 416]; *State* v. *Brotherhood of R. R. Trainmen* (1951) 37 Cal.2d 412, 417 [232 P.2d 857]; *Townsend* v. *County of Los Angeles* (1975) 49 Cal.App.3d 263, 267-268 [122 Cal.Rptr. 500]; *Gilmore* v. *Personnel Board* (1958) 161 Cal.App.2d 439, 448-449 [326 P.2d 874]; *Risley* v. *Bd. of Civil Service Commrs., supra* [60 Cal.App.2d 32 (140 P.2d 167)].) Indeed, '[t]he statutory provisions controlling the terms and conditions of civil service employment cannot be circumvented by purported contracts in conflict therewith.' (*Boren, supra*, at p. 641.)

"In view of these long and well settled principles, we conclude that the power of the Legislature to reduce the tenure of plaintiff's civil service position and thereby to shorten his state service, by changing the mandatory retirement age was not and could not be limited by any contractual obligation."

The rule of *Miller* is, then, that public employment and the rights, duties, and conditions thereof are creatures of statute, not contract, and unless and until vested rights to *retirement* ripen into vested contractual rights, the Legislature may modify conditions of employment without violating *vested* pension rights which have become protected under the contract clauses of the Constitutions. (18 Cal.3d at pp. 815-817.)

In this case, the Legislature, through Assembly Bill No. 508 has, in effect, diminished a right of employment—not a right of retirement.[2]

---

[2]The state maintains the purpose of Assembly Bill No. 508 was to reduce administrative overhead in calculating the interest to the exact day of retirement and to use these savings to help pay for a cost-of-living increase in the retirement program. Plaintiff asserts this is a "fabrication." The *motive* behind, or the *purpose* of Assembly Bill No. 508, is of no concern to us, so we do not deal with the arguments between the parties as to whether certain evidence of legislative intent on this point was properly admitted or judicially noticed, and, if so, its import.

Plaintiff contends defendant failed to show in the trial court that the right to interest up to the day of withdrawal was "anything other than a vested contract right" entitled to protection under the contract clauses of the Constitutions. This alleged failure is asserted to invalidate the summary judgment in favor of defendant, and also the denial of the motion for summary judgment in favor of plaintiff.

Plaintiffs have put the burden on the wrong party. It was plaintiff's burden at trial and it is his burden on appeal to show his *own* motion for summary judgment should have been granted. It is of no avail for plaintiff to repeat, over and over, as he does in his brief, that defendants do not show the interest abatement provisions of Assembly Bill No. 508 met the tests which have been established to protect retirement rights. We have above decided, for reasons stated, that no retirement rights are involved in this matter. That is the key to the validity of the summary judgment for defendant. It was plaintiff, not defendant, who failed to meet a basic burden, i.e., showing there was a retirement right involved.

Defendant, although not an appellant, attempts to establish on appeal that the trial court lacked jurisdiction over the certified class represented by plaintiff, insofar as it included persons who requested refunds between December 1968 and May 8, 1973. We shall not deal with this assertion. Defendant prevailed in the trial court with an unqualified judgment in its favor. Consequently, it is not an "aggrieved party" injuriously affected by the judgment. Defendant is therefore not entitled to be heard as an appellant. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 118.)

The judgment is affirmed.

Reynoso, J., and Watt, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 4, 1980.

---

*Assigned by the Chairperson of the Judicial Council.