[No. D058225. Fourth Dist., Div. One. June 29, 2012.]

CITY OF SAN DIEGO, Plaintiff and Respondent, v.
RICHARD HAAS et al., Defendants and Appellants.

474

## Counsel

Higgs, Fletcher & Mack, John Morris and Victoria E. Fuller for Defendant and Appellant Richard Haas.

Mayer Mangan and Katherine Mayer Mangan for Defendant and Appellant George F. Schaefer.

Glaser, Weil, Fink, Jacobs, Howard, Avchen & Shapiro and Joel N. Klevens for Defendant and Appellant Benjamin Vernon.

Law Office of Michael A. Conger and Michael A. Conger for San Diego Police Officers Association as Amicus Curiae on behalf of Defendants and Appellants.

Mayer Mangan and Katherine Mayer Mangan for Deputy City Attorneys Association of San Diego as Amicus Curiae on behalf of Defendants and Appellants.

Wright & L'Estrange and Joseph T. Ergastolo for Plaintiff and Respondent.

## Opinion

**NARES, J.**—In this pension case the City of San Diego (the City) obtained by summary judgment against defendants San Diego City Employees Retirement System (SDCERS), Richard Haas and Benjamin Vernon (together sometimes defendants), a judicial declaration that defendants are ineligible to receive certain "ancillary" retirement benefits. The ancillary benefits at issue on this appeal are (1) a "13th retirement check," payable whenever there are "excess earnings" available in the retirement system at the end of the year; (2) the "Deferred Retirement Option Program" (DROP), an alternative method of benefit accrual; (3) the right to purchase up to five years of additional service credits (Service Credits); and (4) retiree medical health benefits (collectively, the Four Benefits).

Before they began their employment with the City, defendants or their labor representatives entered into employment contracts or collective bargaining agreements with the City that provided that employees hired on or after July 1, 2005, were ineligible to receive the Four Benefits. However, it was not until January 17, 2007, that the City passed San Diego Ordinance No. 0-19567 (the Ordinance), which amended the San Diego Municipal Code (SDMC) to reflect that employees hired on or after July 1, 2005, were not eligible for the Four Benefits. The Ordinance stated that it was effective 30 days thereafter, i.e., on February 16, 2007.

Defendants Benjamin Vernon and Richard Haas represent a defense class consisting of all City employees hired on or after July 1, 2005, but before February 16, 2007. The defense class is divided into two subclasses. Vernon represents defense subclass A, which consists of employees who were represented in labor negotiations by a recognized bargaining unit. Employees who were not represented by a labor union are represented by Haas in defense subclass B.

Defendants Haas and Vernon assert on appeal[1] that the court erred in granting summary judgment in favor of the City because (1) by its express terms the Ordinance was to apply prospectively; (2) the City did not overcome the presumption that ordinances are to apply prospectively; (3) retroactive application of the Ordinance is unconstitutional because it deprived defendants of vested retirement benefits; and (4) the Ordinance was in violation of article IX, section 143.1 of the San Diego City Charter (City Charter or Charter) which required that it be approved by members of the retirement system.

Defendant George F. Schaefer has filed an appeal, individually, and in propria persona, asserting that the court erred in certifying the defense class.

■ We conclude that although the Ordinance operates retroactively, it is not invalid because it only amends the SDMC to reflect the City's existing agreements with defendants. Further, no vote was required under City Charter, article IX, section 143.1 for the Ordinance to become effective because defendants never accrued rights to the Four Benefits. We also conclude that Schaefer's individual appeal lacks merit. Accordingly, we affirm the judgment.

---

[1] SDCERS has not appealed from the grant of summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

A. *The City's Exclusive Power to Grant Benefits and Negotiate Labor Agreements*

Article III, section 11.2 of the City Charter permits the San Diego City Council (City Council) to enter into multiple-year memoranda of understanding (MOU's) with any recognized City employee organization concerning wages, hours and other terms and conditions of employment. The Charter also authorizes the City to maintain a pension system for its employees through SDCERS. (City Charter, art. IX, § 141.) SDCERS is empowered to issue rules and regulations to administer the pension system and is a separate legal entity from the City. (City Charter, art. IX, § 144.) The City Council, however, possesses the exclusive authority in granting and modifying retirement benefits. (City Charter, art. IX, §§ 141, 146.)

B. *Elimination of the Four Benefits for New Hires on or After July 1, 2005*

The City has recognized five employee bargaining units: the San Diego Municipal Employees Association (MEA); the San Diego City Firefighters Local 145, IAAF, AFL-CIO (Firefighters); Local 127, American Federation of State, County and Municipal Employees, AFL-CIO (AFSCME); the Deputy City Attorneys Association of San Diego (DCAA); and the San Diego Police Officers Association (POA).

The City negotiated benefit modifications for prospective employees in its summer 2005 collective bargaining efforts with the five bargaining units under the Meyers-Milias-Brown Act (MMBA; Gov. Code, § 3500 et seq.). Effective July 1, 2005, the City entered into MOU's with the MEA, Firefighters, AFSCME, and the DCAA. The City also negotiated with the POA, but upon reaching an impasse, the City Council imposed the terms of its last, best, final offer (LBFO) on the POA.

In exchange for receiving a fixed retirement allowance formula and other benefits, the MOU's and LBFO provided that City employees hired on or after July 1, 2005 (New Employees) would not be eligible for the Four Benefits. Neither the MOU's nor the LBFO changed any retirement benefits for City employees hired before July 1, 2005.

The AFSCME, Firefighters and MEA MOU's contained implementation provisions. Article 2, section 2 of the MEA MOU states: "The City shall, in a

---

[2] In the interest of a prompt resolution of this matter, the parties stipulated to 48 facts for the court to consider in resolving this matter by way of summary judgment. Accordingly, we take much of the factual background from those stipulated facts.

timely manner, complete necessary changes in ordinances, resolutions, rules, policies and procedures to conform to this agreement, using September 30, 2005, as a target date for such completion." Article 3 of the MEA MOU states that its term is from July 1, 2005, to June 30, 2008. Article 22, section 1, states that the MOU "reflects the parties' agreement regarding retirement contribution and benefit changes resulting from meet and confer in 2005." MEA members ratified the MOU shortly after negotiations.

Article 5 of the AFSCME MOU contains a similar implementation provision. Article 2 states that the term of the MOU shall be from July 1, 2005, to June 30, 2008. Article 43, section 1.A, further states that the MOU "reflects the parties' agreement regarding retirement contribution and benefit changes resulting from meet and confer in 2005." AFSCME members ratified the MOU shortly after negotiations.

Article 26 of the Firefighters MOU states, in pertinent part: "The City shall act as soon as possible to make the necessary changes in ordinances, resolutions, rules, policies and grievance procedures to conform to this agreement. All such changes shall be submitted to Local 145 prior to their submittal for implementation to insure [*sic*] that the proposed changes are consistent with the agreement. All disputes over language shall be governed by the grievance procedure." Article 27 of the Firefighters MOU states that its term is from July 1, 2005, to June 30, 2006. Article 23, section 1, states that the MOU "reflects the parties' agreement regarding retirement contribution and benefit changes resulting from meet and confer in 2005." Firefighters ratified the MOU shortly after negotiations.

The DCAA MOU does not contain an implementation provision. DCAA members ratified the 2005 MOU.

On June 27, 2005, the City Council passed and adopted resolution No. R-300600, approving the LBFO and ratifying the MOU's entered into by and between the City and its representative bargaining units, to be effective as of July 1, 2005. Resolution No. R-300600's legislative history states that the parties or their representatives ratified their respective agreements, with the express understanding that New Employees would not be eligible for the Four Benefits.

C. *Haas Accepted an Employment Offer with the City That Did Not Include the Four Benefits*

The parties stipulated that at all relevant times, it was the City's custom and practice to provide employees who were not members of the bargaining units (Unrepresented Employees) with the same benefits as members of the

MEA. Haas was an Unrepresented Employee. Haas was offered the position of deputy chief of public works with the City in a letter dated December 9, 2005. Attached to his offer letter was a document entitled "Benefits Schedule, Deputy Chief Operations Officer" (Benefits Schedule). The "Retirement Benefit" section of the Benefits Schedule does not include the Four Benefits and the offered benefits are identical to those included in the MEA MOU. Neither the offer letter nor the Benefits Schedule makes any reference to benefits being defined by any City ordinance. According to Haas, he never received any document from the City explaining his benefits other than the Benefits Schedule. He accepted the position on December 12, 2005.

### D. *SDCERS Extends the Four Benefits to Defendants*

After July 1, 2005, SDCERS advised defendants that, notwithstanding any contrary MOU, contractual obligations, or binding custom and practice, SDCERS would continue to recognize their eligibility to receive the Four Benefits because the City Attorney "had not filed the paperwork" necessary for modification.

### E. *The City Council Amends the Municipal Code to Confirm Elimination of the Four Benefits*

On January 17, 2007, the City Council passed and adopted the Ordinance, which amended the SDMC consistent with the July 1, 2005 benefit changes. In this regard, former section 24.1201.1 of the SDMC provided "[m]embers hired or assuming office on or after July 1, 2005, are non Health Eligible." Section 24.1312.1 of the SDMC provides "[the general provision for five-year purchase of creditable service] does not apply to members hired or assuming office after July 1, 2005." Section 24.1402.1 of the SDMC provides "[m]embers hired or assuming office on or after July 1, 2005, may not participate in DROP." Section 24.1503.1 of the SDMC provides "[m]embers hired or assuming office on or after July 1, 2005, shall not be eligible for participation in the annual supplemental benefit program established by this Article."

The Ordinance states that it shall take effect and be in force on the 30th day from and after its final passage. The Ordinance's legislative history includes the city attorney's official report to the mayor and City Council (Official Report). The Official Report explains that the Ordinance amends the SDMC "to reflect these agreed to and imposed [benefit modifications]" resulting from the 2005 labor negotiations. Among other things, the Official Report states that the City and the bargaining units ratified their respective agreements or unilaterally implemented the LBFO with the express understanding that New Employees would not be eligible for the Four Benefits. It further explains that, as a condition of the benefit modification, the City

expressly promised the bargaining units that all new Unrepresented Employees would receive the same benefits as represented employees would under the 2005 MOU's.

City Charter, article IX, section 143.1(a) provides that "[n]o ordinance . . . [that] affects the benefits of any employee under [the] retirement system shall be adopted without the approval of a majority vote . . ." of City employees. The parties stipulated that no such vote was taken.

### F. SDCERS Informs the City the Effective Date for the 2005 Benefit Changes Was February 2007

In a letter dated August 3, 2007, SDCERS's general counsel informed the City that it would (1) use an effective date of February 16, 2007, for the 2005 benefit changes, and (2) continue to advise employees hired before that date that they were eligible for the Four Benefits.

Then San Diego City Attorney Michael J. Aguirre responded by letter on August 24, 2007, in which he requested that SDCERS discontinue advising employees that they were eligible for the Four Benefits.

SDCERS did not respond to Aguirre's letter and did not stop approving benefit requests by defendants.

### G. SDCERS Approves Vernon and Haas to Purchase Service Credits

In October 2006 defendant Vernon accepted a job with the City as a firefighter. He began working for the City by attending the fire academy. On his first day on the job, a representative of SDCERS informed him that, "there was an agreement in 2005 that [the Four Benefits] were not available but that the city attorney had not filed the paperwork so that it was still available to us." On October 16, 2006, Vernon submitted a request to purchase Service Credits. SDCERS approved the request on February 27, 2007.

On or about June 25, 2007, defendant Haas submitted a request to purchase Service Credits. In August 2007 SDCERS approved Haas's request, and he completed his Service Credit purchase in September 2007.

On October 2, 2007, the City advised Haas that the purchase was ineffective and demanded Haas rescind the purchase. Haas refused.

## H. Procedural Background

### 1. The City files suit

The City brought suit against SDCERS, seeking a declaration that City employees first hired between July 1, 2005, and February 16, 2007, are ineligible to receive the Four Benefits. In response, SDCERS brought a demurrer on the basis of misjoinder of parties, asserting that defendants were necessary and indispensable parties to the suit because their property interests in the Four Benefits may be adversely affected by the declaration sought by the City. The court sustained the demurrer, with leave to amend.

The City thereafter filed a second amended complaint (SAC), naming Vernon and Haas individually and as class representatives. The SAC's second cause of action was directed to defendants and prayed for the following relief: "A judicial determination on the second cause of action that the benefit changes described in the July 1, 2005 MOUs and San Diego City Ordinance No. 19567, and San Diego Municipal Code sections 24.1201.1, 24.1312.1, 24.1402.1, and 24.1503.1, apply to all new City employees hired on or after July 1, 2005."

### 2. The court certifies a defense class

In March 2009 the court certified the City's second cause of action as a defense class action, consisting of two subclasses. The ruling defined subclass A as: "All City employees first hired on or after July 1,2005, and before February 16, 2007, employed in positions within any bargaining unit represented by [MEA], [Firefighters], [AFSCME], [POA], and [DCAA]." Subclass B was defined as: "All City employees first hired on or after July 1, 2005, and before February 16, 2007, who are not members of at least one of the representative bargaining units described in Sub-class A above."

The court found that the defense class alleged by the City was clearly defined and ascertainable. The court further found that common questions of fact and law predominated over individual ones because resolution of the following issues would determine the defendants' entitlement to the Four Benefits: whether the effective date of benefit changes is July 1, 2005, or February 16, 2007; whether the Ordinance is applicable retroactively; and whether the 2005 MOU and LBFO terms are binding on all subclass members. The court found that differences in the MOU's language were immaterial, as they would not affect the central legal issue—the effective date of modification.

The court also found there was adequate representation in that the class representatives' defenses were typical of the class, class counsel were experienced and diligent, and any purported conflict of interest was illusory. The

court found that many of the due process concerns that arise out of defense class actions, such as collusion and inadequate notice, were not present here because defendants would receive actual notice of the pending action, and pension litigation has been subjected to significant public scrutiny. Finally, given the court's conclusion that all 595 class members were necessary parties, the court found that class treatment was clearly in the interests of the parties and the court, and thus certification was appropriate under the heightened standard for a defense class action.

### 3. *The parties' cross-motions for summary judgment*

The City moved for summary adjudication on the second cause of action against defendants on the ground that no defense existed because the undisputed facts demonstrated that defendants had not acquired vested rights to the Four Benefits. Defense subclass A members were bound by the 2005 MOU's or LBFO that modified their eligibility for the Four Benefits, and POA members were collaterally estopped from relitigating issues concerning the LBFO due to litigation between the City and the POA in the federal courts. The City asserted that defense subclass B members were either covered by the MEA MOU by virtue of custom and practice or they accepted employment offers from the City that did not include the Four Benefits as consideration. Alternatively, assuming all defendants gained vested rights to the Four Benefits before employment, they consented to the benefit modifications through these contractual arrangements.

Vernon moved for summary judgment on the City's second cause of action, arguing that he was entitled to the Four Benefits because he was hired before enactment of the Ordinance, which must be construed to operate prospectively because if construed to operate retroactively the Ordinance would be invalid for failure to comply with section 143.1(a) of the City Charter. He also argued the Ordinance violated the contract clauses of the federal and state Constitutions by impairing his vested rights to the Four Benefits.

In his summary judgment motion on the City's second cause of action, Haas argued that (1) the Ordinance is void for failure to comply with Charter, article IX, section 143.1(a); (2) the Ordinance must be construed to operate prospectively, not retrospectively; and (3) he could establish one of his affirmative defenses, namely, retroactive application of the Ordinance violates defense subclass B's due process rights.

Schaefer did not file a summary judgment motion of his own because he elected not to intervene in the trial court.

The trial court granted the City's summary judgment motion, finding that defendants did not have a vested contractual right to the Four Benefits.

Further, the court found that at the time they were hired, defendants did not have a reasonable expectation of receiving such benefits because the ratified, binding MOU's, the LBFO, and the separate contracts did not provide for them. Because defendants were not eligible to receive the Four Benefits, the Ordinance's retroactive operation had no legal significance, and, thus, article IX, section 143.1(a) of the City Charter did not apply.

In its ruling, the court acknowledged that the "modification of retirement benefits was required to be made by an ordinance, not by a resolution or the MOU's referencing employees hired after July 1, 2005." The court found that it "must look only to [the Ordinance] and the legislative history to determine when the modification of the four retirement benefits became effective." The court recognized that there is a presumption that "a statute applies prospectively only," but then found that the City overcame that presumption because the Ordinance and related documents, including the MOU's, demonstrated a "clear intent that employees hired after July 1, 2005, would not receive the four benefits, notwithstanding . . . the additional language that the ordinance would be effective 30 days after enactment."

The court also noted that "[t]he right to a pension vests upon acceptance of employment" and that defendants "had been hired with the understanding that [the Four Benefits] would not apply to them." The court found that employees hired after July 1, 2005, did not have vested contractual rights because, at the time they were hired, the Four Benefits were not provided for in the MOU's.

Finally, the court held that a vote under City Charter, article IX, section 143.1(a) was not required with respect to the Ordinance because, among other things, "the employees hired after July 1, 2005, were not members to have their benefits affected."

This timely appeal followed.

## DISCUSSION

### I. *STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT*

The summary judgment procedure is directed at revealing whether there is evidence that requires the fact-weighing procedure of a trial. " '[T]he trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist, and not to decide the merits of the issues themselves.' [Citation.] The trial judge determines whether triable issues of fact exist by reviewing the affidavits and evidence before him or her and the

reasonable inferences which may be drawn from those facts." (*Morgan v. Fuji Country USA, Inc.* (1995) 34 Cal.App.4th 127, 131 [40 Cal.Rptr.2d 249].) However, a material issue of fact may not be resolved based on inferences if contradicted by other inferences or evidence. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

The evidence of the moving party is strictly construed and that of the opponent liberally construed, and any doubts as to the propriety of granting the motion are to be resolved in favor of the party opposing the motion. (*Branco v. Kearny Moto Park, Inc.* (1995) 37 Cal.App.4th 184, 189 [43 Cal.Rptr.2d 392].) The trial court does not weigh the evidence and inferences, but instead merely determines whether a reasonable trier of fact could find in favor of the party opposing the motion, and must deny the motion when there is some evidence that, if believed, would support judgment in favor of the nonmoving party. (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139 [127 Cal.Rptr.2d 145].) Consequently, summary judgment should be granted only when a moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

Because a motion for summary judgment raises only questions of law, we independently review the parties' supporting and opposing papers and apply the same standard as the trial court to determine whether there exists a triable issue of material fact. (*City of San Diego v. U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575, 582 [35 Cal.Rptr.2d 876]; *Southern Cal. Rapid Transit Dist. v. Superior Court* (1994) 30 Cal.App.4th 713, 723 [36 Cal.Rptr.2d 665].) In practical effect, we assume the role of a trial court and apply the same rules and standards governing a trial court's determination of a motion for summary judgment. (*Lopez v. University Partners* (1997) 54 Cal.App.4th 1117, 1121–1122 [63 Cal.Rptr.2d 359].) We liberally construe the evidence in support of the party opposing summary judgment (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517]) and assess whether the evidence would, if credited, permit the trier of fact to find in favor of the party opposing summary judgment under the applicable legal standards. (Cf. *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850.)

## II. ANALYSIS

### A. *City's Status as a Charter City*

As we have noted, *ante,* "San Diego is a charter city. It can make and enforce all ordinances and regulations regarding municipal affairs subject only to the restrictions and limitations imposed by the city charter, as well as conflicting provisions in the United States and California Constitutions and

preemptive state law." (*Grimm v. City of San Diego* (1979) 94 Cal.App.3d 33, 37 [156 Cal.Rptr. 240] (*Grimm*).) Employee compensation and benefits constitute municipal affairs covered by city charters. (*Ibid.*)

Article III of the Charter describes the City Council's legislative power. Section 11.2 of article III of the Charter provides the City Council's authority to enter into binding agreements with its employees on wages, hours and other terms and conditions of employment, and specifically provides that other provisions of the Charter may not be used to defeat this legislative power.

B. *The City's Power to Enter into Agreements Concerning Benefits*

■ "As a general rule, the terms and conditions of public employment are controlled by statute or ordinance rather than by contract." (*San Bernardino Public Employees Assn. v. City of Fontana* (1998) 67 Cal.App.4th 1215, 1221 [79 Cal.Rptr.2d 634].) However, our Supreme Court recently observed that their " 'often quoted language that public employment is not held by contract' has limited force where, as here, the parties are legally authorized to enter (and have in fact entered) into bilateral contracts to govern the employment relationship." (*Retired Employees Assn. of Orange County, Inc. v. County of Orange* (2011) 52 Cal.4th 1171, 1182 [134 Cal.Rptr.3d 779, 266 P.3d 287] (*Retired Employees*).)[3]

■ "Under the [MMBA] (Gov. Code, §§ 3500–3510), local governments are authorized to meet and confer with their employees' authorized bargaining representative regarding wages, hours, and other terms and conditions of employment, and to enter into and approve written [MOU's] to memorialize their agreements." (*Retired Employees, supra,* 52 Cal.4th at p. 1182.) " 'When agreements of employment between the state and public employees have been adopted by governing bodies, such agreements are binding and constitutionally protected.' " (*Ibid.*)

■ "All contracts, whether public or private, are to be interpreted by the same rules unless otherwise provided by the Civil Code." (*Retired Employees, supra,* 52 Cal.4th at p. 1179.) Moreover, " 'the law does not recognize implied contract terms that are at variance with the terms of the contract as expressly agreed or as prescribed by statute.' " (*Id.* at p. 1181.) Thus, contract terms implied from default statutory provisions may be excluded from public employees' employment contracts by agreement. (See *Professional Engineers in California Government v. Schwarzenegger* (2010) 50 Cal.4th 989, 1041

---

[3] The opinion in *Retired Employees* was issued after briefing in this matter was completed, and we granted leave for the parties to file supplemental briefs addressing this decision. We shall address its impact on this appeal in greater detail, *post.*

[116 Cal.Rptr.3d 480, 239 P.3d 1186] [state employer's unilateral authority to impose a furlough on represented employees "is governed by the terms of the applicable MOU, rather than by any general statutory provision that applies in the absence of an MOU"]; *Dunham v. City of Berkeley* (1970) 7 Cal.App.3d 508, 513 [86 Cal.Rptr. 569] ["Pension provisions are, unless excluded by agreement, part of the contemplated compensation of the city employee and therefore a consideration of the employment contract."].)

Furthermore, prospective employees have no right to any benefits prior to accepting employment, and the public agency is free to change those benefits prior to hiring. (*Miller v. State of California* (1977) 18 Cal.3d 808, 814–815 [135 Cal.Rptr. 386, 557 P.2d 970]; *Kern v. City of Long Beach* (1947) 29 Cal.2d 848, 855 [179 P.2d 799].)

### C. *The MOU's Eliminated the Four Benefits as to Defendants*

Ratified MOU's are "enforceable contracts . . . which should be interpreted to execute the mutual intent and purpose of the parties." (*Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 339 [124 Cal.Rptr. 513, 540 P.2d 609], citation omitted.)

As is detailed, *ante*, the City and the represented employees reached agreement during 2005 labor negotiations and memorialized their agreements in MOU's that eliminated the Four Benefits. The represented employees ratified the MOU's shortly thereafter. On June 27, 2005, the City Council adopted resolution No. R-300600, which ratified the MOU's and approved the LBFO as to the POA. Moreover, Unrepresented Employees such as Haas were provided with benefit schedules that did not contain the Four Benefits.

Accordingly, as the express language of the MOU's, LBFO, and benefit schedules provided New Employees (those hired on or after July 1, 2005) were not eligible to receive the Four Benefits, they determine the scope of their pension benefits. (*City of El Cajon v. El Cajon Police Officers' Assn.* (1996) 49 Cal.App.4th 64, 71 [56 Cal.Rptr.2d 723] [MOU's are construed according to well-settled rules of interpretation and " '[a]s a rule, the language of an instrument must govern its interpretation if the language is clear and explicit' "].)

### D. *Defendants' Contention They Acquired "Vested Rights" to the Four Benefits*

Defendants contend that they acquired vested rights to the Four Benefits and, as a result, the Ordinance cannot be given retroactive effect because such a construction would improperly eliminate vested benefits. This contention is unavailing.

■ Prospective employees have no right to any pension or other employment benefits prior to accepting employment. (*Miller v. State of California, supra,* 18 Cal.3d at pp. 814–815; *Kern v. City of Long Beach, supra,* 29 Cal.2d at p. 855.) Rather, public employees only acquire vested contractual rights to benefits implied from pension statutes upon acceptance of employment and performance of work. (*White v. Davis* (2003) 30 Cal.4th 528, 565–566 [133 Cal.Rptr.2d 648, 68 P.3d 74].) Moreover, "[v]esting remains a matter of the parties' intent." (*Retired Employees, supra,* 52 Cal.4th at p. 1189.)

As of July 1, 2005, New Employees and Unrepresented Employees were ineligible to receive the Four Benefits. Because the City and New Employees agreed to exclude the Four Benefits from the employees' employment contracts, those obligations cannot be said to "vest." (See *Professional Engineers in California Government v. Schwarzenegger, supra,* 50 Cal.4th at p. 1041; *Dunham v. City of Berkeley, supra,* 7 Cal.App.3d at p. 513.) Similarly, Unrepresented Employees that accepted employment on or after July 1, 2005, accepted those positions with a benefits schedule that did not include the Four Benefits.

"[U]nless and until vested rights to retirement ripen into vested contractual rights, the Legislature may modify conditions of employment without violating vested pension rights which have become protected under the contract clauses of the Constitutions." (*Vielehr v. State of California* (1980) 104 Cal.App.3d 392, 396 [163 Cal.Rptr. 795], italics omitted.)

E. *Ordinance No. 0-19567 Is Retroactive*

Defendants assert that even if they did not accrue vested rights to the Four Benefits, the Ordinance's language and legislative history establish that the Ordinance is prospective in nature. We reject this contention.

■ When construing statutes, we " 'ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' " (*Klein v. United States of America* (2010) 50 Cal.4th 68, 77 [112 Cal.Rptr.3d 722, 235 P.3d 42].) " ' "We take a three-step sequential approach to interpreting statutory language. [Citation.] First, we will examine the language at issue, giving 'the words of the statute their ordinary, everyday meaning.' [Citations.] If we conclude that the statutory meaning is free of doubt, uncertainty, or ambiguity, the language of the statute controls, and our task is completed. [Citations.] Second, if we determine that the language is unclear, we will attempt to determine the Legislature's intent as an aid to statutory construction. [Citation.] In attempting to ascertain that intent, 'we must examine the legislative history and statutory context of the act under scrutiny. [Citations.]' [Citation.] Third, if

the clear meaning of the statutory language is not evident after attempting to ascertain its ordinary meaning or its meaning as derived from legislative intent, we will 'apply reason, practicality, and common sense to the language at hand. If possible, the words should be interpreted to make them workable and reasonable [citations], . . . practical [citations], in accord with common sense and justice, and to avoid an absurd result [citations].' " ' " (*Sacks v. City of Oakland* (2010) 190 Cal.App.4th 1070, 1082 [120 Cal.Rptr.3d 1].)

The Ordinance unambiguously provides that City employees "hired or assuming office on or after July 1, 2005" are not eligible for the Four Benefits.

■ Defendants assert that because the Ordinance states that it "shall take effect and be in force on the thirtieth day from and after its final passage," this effective date provision means that the Ordinance has only prospective application. However, the effective date of a statute is merely " 'the date upon which the statute came into being as an existing law.' " (*Preston v. State Bd. of Equalization* (2001) 25 Cal.4th 197, 223 [105 Cal.Rptr.2d 407, 19 P.3d 1148] (*Preston*).) It does not mean that the effective date of the elimination of the Four Benefits is that date. The effective date language does not control over the City Council's clear intent and purpose, which was to make employees hired on or after July 1, 2005, ineligible to receive the Four Benefits. (*Id.* at p. 224 ["where, as here, compelling indicators of the Legislature's intent to give a statute retrospective effect exist, the mere *post*ponement of the statute's operative date is not enough to negate these indicators" (italics added)]; see *Tevis v. San Francisco* (1954) 43 Cal.2d 190, 194–196 [272 P.2d 757] [a charter amendment has retrospective effect even though the amendment delayed its effective date].)

■ ´ Not only is this construction demonstrated by the text of the MOU's, the resolution and the Ordinance, it is consistent with the MMBA, which makes valid and permissible MOU's providing retroactive salary adjustments to public employees. (*San Joaquin County Employees' Assn., Inc. v. County of San Joaquin* (1974) 39 Cal.App.3d 83, 88–89 [113 Cal.Rptr. 912] (*County of San Joaquin*) [acknowledging that under the MMBA there was no impediment to making a salary adjustment retroactive]; *Goleta Educators Assn. v. Dall'armi* (1977) 68 Cal.App.3d 830, 834 [137 Cal.Rptr. 324] [same]; Civ. Code, § 1642 ["Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."].)

Vernon asserts that *County of San Joaquin* is distinguishable because it concerns retroactive pay increases, not benefit decreases. This contention is unavailing. The MMBA provides a collective bargaining mechanism for

resolving labor disputes. (*Glendale City Employees' Assn., Inc. v. City of Glendale, supra,* 15 Cal.3d at p. 336.) *County of San Joaquin* examined whether retroactive, implementing legislation is permitted under the MMBA, such that the local government was obligated to meet and confer on retroactive pay issues. (*County of San Joaquin, supra,* 39 Cal.App.3d at pp. 86–88.) Because the MMBA did not provide the authority for such increases, the determination that the retroactive increases was legal was accomplished under the appropriate constitutional and statutory provisions. (*County of San Joaquin,* at pp. 88–90.) That court, however, did *not* limit its holding to salary or benefit increases. It only considered the legality of the retroactive application of such increases.

Indeed, the City Charter's budgetary process illustrates the need to have benefit changes applied retroactively. Article VII, section 69 of the City Charter provides that the City's fiscal year begins every July 1 and ends the following June 30. Article III, section 11.1 provides that the salary ordinance, which fixes the salaries for all City employees for the coming year, must be adopted by no later than May 30. Article VII, section 70 provides that "[a]ll increases and decreases of salary or wages of officers and employees shall be determined at the time of the preparation and adoption of the budget, and no such increase or decrease shall be effective prior to the fiscal year for which the budget is adopted . . . ." Finally, Article VII, section 71 provides that the City's budget must be adopted in the month of July, and only after two public hearings are held on the draft budget.

As such, the City is required to make any benefit changes effective July 1, even though it cannot officially appropriate the funding for such changes until later that month. The "target date" found in the MEA MOU reflects this budgetary process. Consistent with article VII, sections 69 and 71 of the City Charter, the MOU sets the effective date for benefit changes (and the beginning of its term) for July 1, 2005, the beginning of the fiscal year. The MOU's target date of September 30, 2005, comes more than two months after the appropriations are made by the City, presumably to permit the relevant City departments to generate and enact the needed legislation without impacting the budgetary process. Given this structure, retroactive, implementing legislation is needed to effectuate the benefit changes agreed to by the City and its bargaining units.

F. *The MOU's Implementation Provisions*

Vernon concedes that the MEA, AFSCME, Firefighters and DCAA MOU's all agreed to eliminate the Four Benefits for him and his fellow New Employee members. Nevertheless, he asserts that the MOU's implementation clauses required the enactment of a valid implementing ordinance before the terms of the MOU's became binding on defendants. We reject this contention.

Vernon's interpretation of the implementation clauses is incorrect in several respects. First, he considers the clauses in isolation and ignores the substantive benefit change provisions, the agreements' stated purposes, and the recitals memorializing the parties' underlying intent on benefit changes that the Four Benefits would be eliminated as to employees hired on or after July 1, 2005. Such a reading of the implementation provisions impermissibly renders the bulk of the MOU's, including the benefit change provisions themselves, as surplusage. (*City of El Cajon v. El Cajon Police Officers' Assn.*, *supra*, 49 Cal.App.4th at p. 71; see Civ. Code, § 1642.)

Second, Vernon appears to interpret the implementation clauses as conditions precedent. (See Civ. Code, § 1436 ["A condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed."].) Yet, to be construed in that manner, the implementation clauses would have to plainly and unambiguously state that New Employees' eligibility for the Four Benefits is to be determined by the enactment date of any implementing legislation. (See *Rubin v. Fuchs* (1969) 1 Cal.3d 50, 53 [81 Cal.Rptr. 373, 459 P.2d 925] [contract provisions are not construed as conditions precedent in the absence of language plainly requiring such construction].) There is no such language in· the implementing provisions of the MOU's.

### G. *The Presumption That Statutes Are to Operate Prospectively*

As the City acknowledges, statutes are presumed to operate prospectively. (*Preston, supra*, 25 Cal.4th at pp. 221–222.) However, this presumption may be rebutted by legislative intent, inferred from a statute's express provisions as well as from extrinsic sources, including legislative history. (*Ibid.*)

The plain meaning of the Ordinance's text, coupled with its legislative history, demonstrates that the City Council intended that the Ordinance operate retroactively to effectuate the parties' already existing agreements on benefit modifications. Although it was not enacted until January 17, 2007, or "effective" until February 16, 2007, the Ordinance plainly states that employees hired on or after July 1, 2005, are ineligible for the Four Benefits. Thus, the City Council intended that the Ordinance be given retroactive effect to July 1, 2005, the effective date of the parties' agreement. (*Preston, supra*, 25 Cal.4th at p. 222 [courts must apply statute retrospectively if legislative intent is clear].)

The Ordinance's legislative history also reveals an intent that it be applied retroactively. In an October 31, 2006 memo, then City Attorney Aguirre explained to the mayor and City Council that the Ordinance sought to

retroactively effectuate the benefit modifications resulting from the 2005 labor negotiations. Memoranda from city attorneys to city councils concerning a draft ordinance are properly considered in determining legislative intent. (*Aguiar v. Superior Court* (2009) 170 Cal.App.4th 313, 326, fn. 7 [87 Cal.Rptr.3d 813].)

Defendants contend that the Ordinance must be construed to apply prospectively based upon its effective date of February 16, 2007. However, as discussed, *ante*, the Ordinance's effective date is merely " 'the date upon which the statute came into being as an existing law.' " (*Preston, supra,* 25 Cal.4th at p. 223.) It does not control over the City Council's clear intent and purpose that the benefit modifications be applied retroactively to July 1, 2005. (*Ibid.*) Defendants' interpretation ignores the Ordinance's plain language and purpose.

Accordingly, the court correctly found the City has overcome the presumption that the Ordinance operated prospectively.

### H. Retired Employees *Decision*

As noted, *ante,* following briefing by the parties, the California Supreme Court issued its decision in *Retired Employees, supra,* 52 Cal.4th 1171, and we allowed the parties to file supplemental briefs to address this case. *Retired Employees* supports the court's grant of summary judgment in favor of the City.

In *Retired Employees,* our high court answered a question certified by the Ninth Circuit Court of Appeals: " '[w]hether, as a matter of California law, a California county and its employees can form an implied contract that confers vested rights to health benefits on retired county employees.' " (*Retired Employees, supra,* 52 Cal.4th at p. 1176.) The question arose because of Orange County's decision to end a long-standing practice of pooling retirees with active employees for purposes of calculating health insurance premiums. (*Id.* at p. 1177.) Because active employees tend to be younger and healthier than retirees, the pooling effectively lowered retirees' health insurance costs below what they would have paid absent pooling. (*Ibid.*) When the county ended the practice, the retirees sued in federal court under the state and federal Constitutions' contract clauses (Cal. Const., art. I, § 9; U.S. Const., art. I, § 10, cl. 1), arguing that although the express provisions of various MOU's were silent as to the duration of the pooling, the long-standing and consistent practice of doing so had created an implied contractual right to its continuation. (*Retired Employees Assn. of Orange County v. County of Orange* (2010) 610 F.3d 1099, 1102; *Retired Employees, supra,* 52 Cal.4th at pp. 1177–1178.)

On appeal, the Ninth Circuit sought the California Supreme Court's guidance on whether a county could enter into an implied contract for vested retiree health benefits, and the Supreme Court answered in the affirmative. The Supreme Court held that vested contractual rights may be implied from an ordinance or resolution, including a collective bargaining agreement ratified by resolution. (*Retired Employees, supra,* 52 Cal.4th at p. 1176.) The key question, according to the Court, was what the parties intended: if the language or circumstances accompanying the passage of a resolution, ordinance, or other legislative act "clearly evince a legislative intent to create private rights of a contractual nature enforceable against the [employer]" then courts should find such a right. (*Id.* at p. 1177.)

However, our high court also held that where, as is the case here, the parties are authorized to bargain collectively under the MMBA, the MOU's they have agreed to govern their relationship and, once ratified, " 'such agreements are binding and constitutionally protected.' " (*Retired Employees, supra,* 52 Cal.4th at p. 1182.) Such MOU's are binding and enforceable contracts that the City may enforce against its employees. (*Id.* at p. 1182.)

Defendants assert that *Retired Employees* supports the proposition that because the Four Benefits were part of the SDMC at the time they were hired, those benefits may be implied in their employment contracts at the time they were hired. In fact *Retired Employees* negates this contention because " 'the law does not recognize implied contract terms that are at variance with the terms of the contract as expressly agreed or as prescribed by statute.' " (*Retired Employees, supra,* 52 Cal.4th at p. 1181.) Thus, vested rights may not be implied from the SDMC where, as here, they are contrary to the express terms of the parties' contract. (*Id.* at pp. 1179–1182, 1187.) Because the MOU's expressly made employees hired on or after July 1, 2005, ineligible for the Four Benefits that existed at that time in the SDMC, they cannot be implied from the SDMC into the MOU's. (*Id.* at p. 1181.)

Defendants again rely upon SDCERS's representations that they were entitled to the Four Benefits, despite the ratified MOU's. However, we may only look to whether the City Council, and not SDCERS, intended to grant vested rights to the Four Benefits. (*Retired Employees, supra,* 52 Cal.4th at p. 1190.) This is because, as we explained in another City pension case, only the City Council has the power to grant employee benefits, and SDCERS exceeds its authority when it attempts to "expand pension benefits" beyond those the City Council has *granted.* (*City of San Diego v. San Diego City Employees' Retirement System* (2010) 186 Cal.App.4th 69, 79–80 [111 Cal.Rptr.3d 418].)

According to amicus curiae DCAA, *Retired Employees* "confirms that [defendants] are correct that the bare MOU, without an implementing ordinance, did not eliminate pension benefits." Actually, Retired Employees held just the opposite, stating the alleged contractual right there did "not necessarily depend on whether there is express language in a statute or ordinance . . . ." (*Retired Employees, supra*, 52 Cal.4th at p. 1183.)

Accordingly, *Retired Employees* supports our conclusion that the court did not err in granting summary judgment on behalf of the City.

## I. *Presumption That Legislation Is Valid*

Legislative enactments are presumed valid. (*County of Del Norte v. City of Crescent City* (1999) 71 Cal.App.4th 965, 973 [84 Cal.Rptr.2d 179].) To overcome this presumption, defendants must show "evidence compelling the conclusion [the Ordinance] is unreasonable and invalid." (*Ibid.*)

Defendants raise several arguments attacking the validity of the Ordinance. None of these contentions is availing.

### 1. *The Ordinance's retroactivity is consistent with the Charter and the MMBA*

Haas asserts that the Ordinance violated article III, former section 17 of the City Charter, which required that all ordinances be effective 30 days from date of passage. Thus, Haas contends, any assertion that the Ordinance took effect earlier than February 16, 2007, "contradicts the Charter and the Ordinance itself."

However, although article III, former section 17 of the City Charter stated when ordinances become effective, it does not make a retroactive ordinance invalid. This is so because nothing in the Charter expressly prohibits retroactive ordinances, and " '[r]estrictions on a charter city's power may not be implied.' " (*Domar Electric, Inc. v. City of Los Angeles* (1994) 9 Cal.4th 161, 171 [36 Cal.Rptr.2d 521, 885 P.2d 934].)

Moreover, the Charter permits the City to enact retroactive legislation to effectuate its labor agreements. Article III, section 11.2 of the Charter provides that no other Charter provision may be construed to limit the City Council's authority to enter into labor negotiations and agreements under the MMBA. The MMBA also allows retroactive implementing legislation to effectuate the parties' intent in MOU's. (*County of San Joaquin, supra*, 39 Cal.App.3d at pp. 87–88.) Additionally, as we have discussed, *ante*, retroactive legislation is necessary to comply with the mandatory budgeting process

and timetables set forth in article III, section 11.2 and article VII, sections 69–71 of the Charter. Thus, the Ordinance's retroactivity does not violate the City Charter.

2. *The Ordinance's retroactivity does not violate the federal and state Constitutions*

Defendants assert that the Ordinance would violate the contract clause and their due process rights if it were given retroactive application. These contentions are unavailing.

Vernon contends that the Ordinance cannot be given retroactive effect because doing so would violate the contract clause by impairing his vested contract rights to the Four Benefits.

The Ordinance does not impair any vested rights to the Four Benefits because it only implements the benefit changes that were agreed to before defendants began their employment with the City. The City Council's purpose and intent in enacting the Ordinance—effectuating its employment agreements—does not amount to "retroactivity" that would violate the contract clause: "[U]nless and until vested rights to retirement ripen into vested contractual rights, the Legislature may modify conditions of employment without violating vested pension rights which have become protected under the contract clauses of the Constitutions." (*Vielehr v. State of California, supra,* 104 Cal.App.3d at p. 396, italics omitted.)

At the time they began their employment with the City, New Employees and Unrepresented Employees agreed to be bound by the benefit modifications by virtue of (1) the 2005 MOU's; (2) the 2005 LBFO; (3) accepting offers of employment; and (4) City custom and practice. Because the Ordinance merely restricts them to the gains they reasonably expected to receive pursuant to these agreements, there can be no impairment of vested rights and no contract clause violation. (*El Paso v. Simmons* (1965) 379 U.S. 497, 515 [13 L.Ed.2d 446, 85 S.Ct. 577] [no impairment if law merely restricts parties to "gains reasonably . . . expected" from contracts]; *Allen v. Board of Administration* (1983) 34 Cal.3d 114, 120 [192 Cal.Rptr. 762, 665 P.2d 534] [same]; *San Bernardino Public Employees Assn. v. City of Fontana, supra,* 67 Cal.App.4th at p. 1223 [no impairment if contracting party consents to modification].)

Haas challenges retroactive application of the Ordinance on due process grounds. According to Haas, the City's enactment of the retroactive Ordinance violates "Subclass B Members' due process rights by attempting to strip away vested retirement rights without any opportunity to be heard."

■ To the extent Haas is asserting a procedural due process violation, such contention is unavailing because procedural due process does not apply to legislative action such as that taken here by the City Council. (*Horn v. County of Ventura* (1979) 24 Cal.3d 605, 612 [156 Cal.Rptr. 718, 596 P.2d 1134], citing *Mullane v. Central Hanover Tr. Co.* (1950) 339 U.S. 306, 313 [94 L.Ed. 865, 70 S.Ct. 652].)

■ Moreover, any substantive due process claim also lacks merit. A retroactive statute may violate substantive due process "if it deprives a person of a vested right; or if it impairs the obligation of a contract." (*Rosefield Packing Co. v. Superior Court* (1935) 4 Cal.2d 120, 122 [47 P.2d 716].) Whether Haas asserts a defense under one clause or the other depends upon whether the nature of the allegedly impaired right is a property right or a contractual right. Because he claims contract impairment and not property deprivation, Haas's substantive due process defense must be evaluated under the contract clause. (*Graham v. Connor* (1989) 490 U.S. 386, 395 [104 L.Ed.2d 443, 109 S.Ct. 1865]; *In re Lowe* (2005) 130 Cal.App.4th 1405, 1426 [31 Cal.Rptr.3d 1].) Indeed, Haas concedes this point by relying entirely on cases that all analyze pension benefits under the contract clause. As such, Haas's contention fails for the same reason as Vernon's, as detailed, *ante*.

3. *A vote under City Charter, article IX, section 143.1(a) was not necessary*

Defendants argue that the Ordinance is invalid under Charter, article IX, section 143.1(a), which provides in part: "No ordinance amending the retirement system which affects the benefits of any employee under such retirement system shall be adopted without the approval of a majority vote of the members of said system."

It is undisputed that no such vote was held to approve the Ordinance.

■ However, this court has held the language of Charter, article IX, section 143.1(a) means that a vote is not required under that section if "the ordinance in question does not affect in any manner either the substantive benefits or the vested rights of any member of the retirement system." (*Grimm, supra*, 94 Cal.App.3d at p. 41, fn. 4.) The SDMC defines an SDCERS "member" as someone who "will be entitled, when eligible, to receive benefits." (SDMC, § 24.0103.) Defendants are not entitled to receive the Four Benefits because their eligibility for those benefits was eliminated before they began their employment with the City by virtue of the various agreements, imposed terms, and the City's custom and practice. Because they are ineligible to receive the Four Benefits and did not otherwise obtain vested rights to those benefits, they are not SDCERS "members" for purposes of

Charter, article IX, section 143.1(a), and no vote under that section was necessary. (*Grimm, supra,* 94 Cal.App.3d at p. 41, fn. 4.)

Vernon asserts the City is judicially estopped from making this argument because the City has taken the position in other proceedings that the City's retirement plan can only be amended by an ordinance accompanied by a Charter, article IX, section 143.1(a) vote.

However, the doctrine of estoppel does not apply here because the City has not taken "totally inconsistent positions." (*Scripps Clinic v. Superior Court* (2003) 108 Cal.App.4th 917, 943 [134 Cal.Rptr.2d 101]; see *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 182 [70 Cal.Rptr.2d 96] [positions " 'must be clearly inconsistent so that one necessarily excludes the other' "].)

The previous cases upon which Vernon relies did not concern collectively bargained MOU's, but rather City resolutions that provided union leaders with pension benefits calculated in part on their union activities. The resolutions were never codified by ordinance, and the union leaders attempted to enforce these against the City as if they were contracts. The City argued that the resolutions were not contract obligations and that they were insufficient to grant the increased benefits, which required a duly enacted ordinance and a vote of SDCERS members under Charter, article IX, section 143.1(a).

Here, by contrast, the City is attempting to enforce collectively bargained MOU's against defendants that are binding under contract and labor law in the period before an implementing ordinance was enacted by the City. The MOU's eliminated defendants' eligibility to receive the Four Benefits before they could vest and, as a result, no Charter, article IX, section 143.1(a) vote was required to amend the SDMC because they were not affected "members" of SDCERS under *Grimm.* Accordingly, Vernon is unable to show that the trial court abused its discretion in finding that the positions taken by the City were not "totally inconsistent."

## J. *Alleged Prejudice to Haas*

Haas asserts that he will be prejudiced by the Ordinance's retroactive application because he used his purchased Service Credits to qualify for retirement. If his purchase was void, he could not collect any retirement benefits.

However, Haas's circumstances are immaterial to the court's analysis of the Ordinance's validity. (See *Jiagbogu v. Mercedes-Benz USA* (2004) 118 Cal.App.4th 1235, 1244 [13 Cal.Rptr.3d 679] ["principles of equity [cannot] be used to avoid a statutory mandate"]; *Timberline, Inc. v. Jaisinghani*

(1997) 54 Cal.App.4th 1361, 1368, fn. 5 [64 Cal.Rptr.2d 4] [" ' " 'Rules of equity cannot be intruded in matters that are plain and fully covered by positive statute . . .' " ' " " and neither an equitable fiction nor maxim " ' " 'may nullify a statute.' " ' "].)

Moreover, any prejudice to Haas was caused by his own actions. Haas made his service purchase request in August 2007. On October 2, 2007, the City advised Haas that the purchase was ineffective and demanded Haas rescind the purchase. Haas did not do so.

### K. *Schaefer's Appeal from Class Certification Order*

In addition to "adopting" class representative Vernon's arguments, Schaefer asserts the court's order certifying the defense class was erroneously based on alleged erroneous findings of fact. Specifically, Schaefer asserts the court erred in certifying the defense class based upon its findings that (a) common questions of law and fact predominate; (b) Vernon's and Haas's defenses were typical of the class; and (c) Vernon and Haas would fairly and adequately represent the class's interests. He further contends that members of the defense class were denied due process because the "opt-out" notice was defective as it did not disclose a conflict of interest between counsel and the class. These contentions are unavailing.[4]

#### 1. *Common questions of law and fact predominate*

 "The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. [Citations.] 'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." ' " (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 [139 Cal.Rptr.3d 315, 273 P.3d 513].)

Schaefer asserts that common questions of law or fact do not predominate here because the various MOU's implementation provisions do not contain identical language "governing the conditions precedent" to elimination of the Four Benefits.

---

[4] On November 12, 2010, the City moved to dismiss Schaefer's appeal for lack of standing. On February 4, 2011, we ordered that the motion to dismiss would be heard concurrently with this appeal. Because we conclude the court did not err in certifying the defense class, we need not reach the merits of the City's motion to dismiss.

However, the issue is not whether the operative instruments are uniform or identical, but " 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.' " (*Brinker Restaurant Corp. v. Superior Court, supra,* 53 Cal.4th at p. 1021.) Thus, a common question predominates when "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." (*Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. ___ [180 L.Ed.2d 374, 131 S.Ct. 2541, 2551].)

Here, the court found that the following common questions predominate over individual issues: (1) All defendants: whether the effective date of benefit changes is July 1, 2005, or February 16, 2007; (2) All defendants: whether the Ordinance is applicable retroactively; (3) Subclass A: whether the MOU and LBFO terms are binding on all subclass members; (4) Subclass B: whether the MOU's are enforceable on all subclass members.

Resolution of these issues would, and actually did, determine the status of defendants' retirement benefits "in one stroke." (*Wal-Mart Stores, Inc. v. Dukes, supra,* 564 U.S. at p. ___ [131 S.Ct. at p. 2551]; see *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 327 [17 Cal.Rptr.3d 906, 96 P.3d 194].)

### 2. *Vernon's defenses are typical of the class*

Subclass A (of which Schaefer is a member) representative Vernon's first affirmative defense to the SAC claimed that he was an inadequate representative to represent all members of the class. Schaefer contends that class treatment was improper because this affirmative defense was not typical of the class.

Typicality is present when the named class representative's interest in the action is significantly similar to that of the other class members. (*Daniels v. Centennial Group, Inc.* (1993) 16 Cal.App.4th 467, 473 [21 Cal.Rptr.2d 1].) Vernon vigorously opposed the City's second cause of action, asserting numerous affirmative defenses on behalf of subclass A, including impairment of contract. Indeed, Schaefer's contention is negated by his adoption in his opening brief of all of Vernon's contentions on appeal. (See *Classen v. Weller* (1983) 145 Cal.App.3d 27, 46 [192 Cal.Rptr. 914] [defense is typical if it arises from same event, practice or course of conduct and the same legal theory as the other class members' defenses].)

### 3. *Subclass A's counsel did not operate under a disabling conflict of interest*

Schaefer next contends that Vernon was not an adequate representative because his counsel was disqualified by a conflict of interest because the City

paid his fees and this financial incentive prevented counsel from adequately investigating defenses and filing a motion to decertify the class. This contention is unavailing.

 The State Bar Rules of Professional Conduct, rule 3-310(F) recognize "that there may be a conflict of interest where, [as here], a third party is paying for the attorney to represent another person or entity." (*Sharp v. Next Entertainment Inc.* (2008) 163 Cal.App.4th 410, 428 [78 Cal.Rptr.3d 37].) Such an attorney is disqualified from representation unless the client gives informed written consent to the arrangement. (*Id.* at pp. 429–430.) However, unnamed class members are not considered to be clients of the proposed class counsel for purposes of applying the professional rule that restricts representation when there are concurrent conflicts of interest. (*Id.* at pp. 433–434.)

 Moreover, here class counsel's fees were paid pursuant to provisions of the California Tort Claims Act, which authorizes retention of independent counsel and payment of such fees whenever an employee is sued in his or her official capacity or by the City itself. (See Gov. Code, §§ 995–996.6.) City employees, including members of the defense class, do not have the right to independent counsel under these statutes. (*Laws v. County of San Diego* (1990) 219 Cal.App.3d 189, 192 [267 Cal.Rptr. 921].) In fact, courts have rejected Schaefer's assertion, which seeks to use Rules of Professional Conduct, rule 3-310 to create a right to independent counsel or to disqualify counsel retained by the City. (*City of Huntington Beach v. Petersen Law Firm* (2002) 95 Cal.App.4th 562, 568–569 [115 Cal.Rptr.2d 568].) This rule is the same regardless of whether the conflict is actual or merely potential. (*Ibid.*)

### 4. *The trial court properly exercised its discretion in approving the class notice*

Schaefer contends that the class notice was required to disclose the presence of the conflict of interest created by the City paying class counsel's fees. Such nondisclosure, argues Schaefer, mandates reversal of the class certification order.

 However, Schaefer fails to demonstrate that the trial court abused its discretion in approving the class notice. (*7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1164 [102 Cal.Rptr.2d 777] ["[T]he trial court 'has virtually complete discretion as to the manner of giving notice to class members.' "].) The trial court must only "assure that the notice be 'neutral and objective in tone, neither promoting nor discouraging the assertion of claims.' " (*Gainey v. Occidental Land Research* (1986) 186 Cal.App.3d 1051, 1057–1058 [231 Cal.Rptr. 249].)

The class notice adequately informed class members that they could not opt out of the action, but that they could hire their own counsel at their own

expense. The court was not required to inform unnamed class members of the fee agreement or secure their informed written consent because those considerations are not relevant, as discussed, *ante*, under the Tort Claims Act. The court presented unnamed class members with " 'the relevant facts in an unbiased format,' " and thus, it was proper. (*Gainey v. Occidental Land Research, supra*, 186 Cal.App.3d at p. 1058.)

## DISPOSITION

The judgment is affirmed. The City shall recover its costs on appeal.

McConnell, P. J., and Benke, J., concurred.