Filed 12/19/13  Breitman v. County of Los Angeles CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| REID BREITMAN, | B246992 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS133557) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert H. O'Brien, Judge.  Affirmed.

Corporate Legal Services and Mark J. Leonardo for Plaintiff and Appellant.

John F. Krattli, County Counsel, and Sayuj Panicker, Deputy County Counsel, for Defendant and Respondent.

Los Angeles County Treasurer and Tax Collector (County) sold two tax-defaulted properties owned by Polly Lin, resulting in excess proceeds of approximately $36,000 (excess proceeds). Appellant Reid Breitman, who allegedly acquired Lin's right to claim the excess proceeds, filed a writ of mandate action seeking to order County to approve the claims. In this appeal from the judgment denying the petition, we reject Breitman's contentions and affirm.

## BACKGROUND

### I. Revenue and Taxation Code Section 4675

Before discussing the facts, we briefly review the excess proceeds claim filing process set forth in Revenue and Taxation Code section 4675.[1] Section 4675 provides that a claim for excess proceeds may be filed by "[a]ny party of interest in the property" within one "year following the recordation of the tax collector's deed to the purchaser." (§ 4675, subd. (a).) Under the statute, there are two types of parties of interest: (1) lienholders, who have first priority; and (2) owners of record, who have second priority. (§ 4675, subd. (e).)

In addition to filing a direct claim for excess proceeds, a party of interest may assign his or her right to file such a claim, but only by "a dated, written instrument" that meets the statutory requirements. (§ 4675, subd. (b).) Under section 4675, the assignment: (1) must "explicitly state[] that the right to claim the excess proceeds is being assigned"; and (2) may be made "only after each party to the proposed assignment has disclosed to each other party to the proposed assignment all facts of which he or she is aware relating to the value of the right that is being assigned." (*Ibid.*) These requirements are mandatory; an attempted assignment "that does not comply with these requirements shall have no effect." (*Ibid.*)

---

[1] Unless otherwise indicated, all further statutory references are to the Revenue and Taxation Code.

A third party may act on behalf of, or in place of, any party of interest with respect to the filing of a claim for excess proceeds, but the third party must "submit proof with the claim that the amount and source of excess proceeds have been disclosed to the party of interest and that the party of interest has been advised of his or her right to file a claim for the excess proceeds on his or her own behalf directly with the county at no cost." (§ 4675, subd. (c).)

According to subdivision (d) of section 4675, "The claims shall contain any information and proof deemed necessary by the board of supervisors to establish the claimant's rights to all or any portion of the excess proceeds."

## II.     County's Claim and Assignment Forms

County has developed certain forms pertaining to claims for excess proceeds. The two forms relevant to this litigation are the "Claim for Excess from the Sale of Tax-Defaulted Property" (claim form) and the "Assignment of Right to Collect Excess Proceeds" (assignment form).

### A.     County's Claim Form

The claim form requires the party of interest's notarized signature, address, telephone number, and Social Security and driver's license numbers. The claim form also requires the party of interest's: (1) declaration under penalty of perjury that he or she is a party of interest pursuant to section 4675; and (2) written explanation as to why he or she is a party of interest under section 4675.

The back of the form provides the following instructions: (1) owners of record must submit original or certified copies of the deed to the property; (2) if the claim is being filed by a third party who is acting on behalf of, or in place of, a party of interest, the third party "shall submit proof that the amount of excess proceeds available has been disclosed to such party of interest and the fact that said former owner or lienholder may file for such excess proceeds on his or her own behalf"; (3) if a "party of interest appoints an agent to act on his or her behalf, an Authorization for Agent to Collect Excess

3

Proceeds form must be completed in addition to this form"; and (4) when "a claim involving an assignment of right has been approved, the refund warrant will be issued in both the assignor's and assignee's names."

### B.      County's Assignment Form

The assignment form requires the party of interest (assignor) to:  (1) identify the property that was sold at public auction; (2) state the amount of excess proceeds that is available for refund; and (3) provide his or her notarized signature, Social Security number, and driver's license number.  The assignment form requires the following declaration by the party of interest under penalty of perjury:  "I AM GIVING UP MY RIGHT TO FILE A CLAIM FOR THE EXCESS PROCEEDS.  I HAVE A RIGHT TO FILE A CLAIM FOR THIS REFUND ON MY OWN BEHALF WITHOUT AN ASSIGNMENT.  FOR VALUABLE CONSIDERATION RECEIVED I HAVE SOLD THIS RIGHT OF COLLECTION (assignment) TO THE ASSIGNEE.  I certify under penalty of perjury that I have disclosed to the assignee all facts of which I am aware relating to the value of this right I am assigning."

The back of the assignment form contains the following information:  (1) if a party of interest assigns his or her right to claim the excess proceeds, a completed assignment form is required; (2) if a claim involving an assignment of right "has been approved, the refund warrant will be issued in both the assignor's and assignee's names"; and (3) if the claim is filed by a third party who is acting on behalf of, or in place of, a party of interest, the third party "shall submit proof that the amount of excess proceeds available has been disclosed to the party of interest and the fact that said former owner or lien holder may file for such excess proceeds on his or her own behalf."

## III.    The Facts of This Case

On September 26, 2008, a third party—Pacific Holdings, LLC—completed and filed the subject claim and assignment forms for the excess proceeds from the tax sales of Lin's properties.  The completed claim and assignment forms contained what appeared to

4

be Lin's notarized signature, address ("c/o Pacific Holdings, 2050 Russett Way"), and driver's license and Social Security numbers.

On April 7, 2009, Pacific Holdings assigned its rights to Lin's excess proceeds to Breitman.

On January 27, 2010, Breitman allegedly spoke by telephone with Deputy County Counsel Brandi Moore concerning the pending claims and, according to Breitman's opening brief, was told by Moore that the claims had been approved. Breitman argues on appeal that under the doctrine of equitable estoppel, County is bound by Moore's purported statement that the claims for excess proceeds would be approved.

However, the sole evidence of Moore's purported statement consists of the emails that were exchanged between Breitman and Moore on March 10, 2010. In his March 10, 2010 email to Moore, Breitman stated in relevant part: "I thought that when we spoke, you said that you advised the Excess Proceeds Unit to send the warrant, made payable to Polly Lin and Pacific RE Holdings. I received a letter stating that they now want original or certified copies of documents pertaining to Polly Lin, such as [S]ocial [S]ecurity card, picture identification, deed recorded 10/16/1978, quitclaim deed recorded 7/30/04 . . . ." Breitman further stated: "As you recall, we dispute that Polly Lin is the claimant at all. However, to make things easy, we agreed that the check for excess proceeds could be written payable to Polly Lin AND Pacific Re Holdings, so that once we have the check, we can go back and find Polly Lin again, and get her to endorse the check. As the original sale from Polly to Pacific was arranged by a middleman/broker who we can no longer find, we have to do a lot of work, and it will be difficult to go ask her for sensitive documents like her [S]ocial [S]ecurity card and picture ID." Breitman stated in closing: "I need you to help me to get the excess proceeds unit to move forward and issue the check, without making unreasonable demands."

In her March 10, 2010 reply to Breitman's email, Moore stated in relevant part: "Although you dispute that Polly Lin is the claimant, the claim was not submitted by Pacific Holdings, but by Polly Lin c/o Pacific Holdings. That may have been an error by Pacific Holdings, but that is the document that the County has to work with.

5

Nevertheless, the only way Pacific Holdings can claim to be a party of interest by way of assignment is to prove that Polly Lin was a party of interest, and that she is the correct 'Polly Lin' that is related to this property. As you can imagine, the County often times receives multiple claims from people with the same name." Moore further stated: "I was not aware that all the necessary processing of the claim had not taken place, but that processing must go forward. Revenue and Taxation Code section 4675(d) provides that the County may determine what information and proof is necessary to establish the claimant's right to excess proceeds. While I did advise the Excess Proceeds Unit that they could send the warrant to your address, payable to Polly Lin and Pacific Holdings, that advice did not mean that they could just order the warrant if their research was incomplete."

On May 26, 2010, County received a notarized letter from Lin, which stated that her purported signatures on the claim and assignment forms had been forged. Lin included photocopies of her driver's license and passport, which did not correspond with the numbers provided on the forms submitted by Pacific Holdings.

On July 13, 2010, Breitman sued Lin for breach of contract. (*Breitman v. Lin* (Super. Ct. L.A. County, No. BC441494).) On October 2, 2010, Breitman and Lin reached a settlement agreement in which they agreed to split the excess proceeds that they assumed would be paid by County. They agreed in relevant part that: (1) Breitman would file a notice of settlement, but would request that the court retain jurisdiction to enforce the terms of the settlement agreement; (2) upon the receipt by Lin's attorney (George Nicoletti) of the excess proceeds, Nicoletti would give Breitman his share of the excess proceeds above $12,000; and (3) upon Breitman's receipt from Nicoletti of his share of the excess proceeds, Breitman would dismiss his breach of contract action against Lin.

In a November 29, 2010 letter, Nicoletti informed County of the settlement agreement between Lin and Breitman. The letter stated that according to paragraph 3b of the settlement agreement, County had "approved the claim for excess proceeds lodged by Pacific through Breitman but request[ed] proof of identification from Lin in order to

6

disburse funds." To comply with the request for proof of identification, Nicoletti provided County with additional copies of the same driver's license and passport that Lin had sent in May 2010 to support her assertion that her signatures had been forged. Notwithstanding the inconsistent use of the same identification documents for opposite ends, Nicoletti instructed County to release the excess proceeds to his "State Bar Trust Account . . . for distribution to the claiming parties" pursuant to their settlement agreement.

On June 10, 2011, County denied the claims for excess proceeds and issued two letters of denial. One letter stated in relevant part: "After careful review of our records and documentation received, we are unable to verify that the Polly Lin who executed the claim is the Polly Lin who was the assessee of record prior to the tax sale." The other letter stated in relevant part: "After careful review of our records and documentation received, it was determined that the claim was not filed timely."

On August 25, 2011, Breitman filed the present petition for writ of mandate, seeking to overturn County's denials of the claims for excess proceeds. After the matter was tried on December 12, 2012, the petition was denied. Judgment was entered on March 21, 2013. Pursuant to California Rules of Court, rule 8.104(d), we treat Breitman's appeal, which was prematurely filed prior to the entry of judgment, as filed immediately after entry of judgment.

## DISCUSSION

### I.      Standard of Review

"Code of Civil Procedure section 1085, subdivision (a) provides: 'A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . .' '[M]andamus will not lie to control an exercise of discretion, i.e., to compel an official to exercise discretion in a particular manner. [Citation.] Generally, mandamus may only be employed to compel the

performance of a duty that is purely ministerial in character.' (*Morris v. Harper* (2001) 94 Cal.App.4th 52, 62.)

"'In most cases, the appellate court must determine whether the agency had a ministerial duty capable of direct enforcement or a quasi-legislative duty entitled to a considerable degree of deference. This question is generally subject to de novo review on appeal because it is one of statutory interpretation, a question of law for the court.' (*Carrancho v. California Air Resources Board* (2003) 111 Cal.App.4th 1255, 1266.) 'Even if mandatory language appears in the statute creating a duty, the duty is discretionary if the [entity] must exercise significant discretion to perform the duty.' (*Sonoma AG Art v. Department of Food & Agriculture* (2004) 125 Cal.App.4th 122, 127.)

"'Where the duty in question is not ministerial, mandate relief is unavailable unless the petitioner can demonstrate an abuse of discretion. "'While, of course, it is the general rule that mandamus will not lie to control the discretion of a court or officer, meaning by that that it will not lie to force the exercise of discretion in a particular manner . . . [it] will lie to correct abuses of discretion . . . .' [Citation.] In determining whether an abuse of discretion has occurred, a court may not substitute its judgment for that of the administrative board [citation], and if reasonable minds may disagree as to the wisdom of the board's action, its determination must be upheld [citation]." [Citation.] A decision is an abuse of discretion only if it is "arbitrary, capricious, entirely lacking in evidentiary support, unlawful, or procedurally unfair." [Citation.]' (*Mooney v. Garcia* (2012) 207 Cal.App.4th 229, 235.)

"When there is no ministerial duty and review is for abuse of discretion, such limited review is grounded in the doctrine of separation of powers, acknowledges the expertise of the agency, and derives from the view that '"[c]ourts should let administrative boards and officers work out their problems with as little judicial interference as possible. . . .'" (*Lindell Co. v. Board of Permit Appeals* (1943) 23 Cal.2d 303, 315; see *Western/California, LTD v. Dry Creek Joint Elementary School Dist.* (1996) 50 Cal.App.4th 1461, 1492.) It also recognizes that a challenged administrative

8

agency action comes before the court with a strong presumption that the agency's official duty has been regularly performed and the burden is on appellants to show the agency's action is invalid.  (*Luxor Cab Co. v. Cahill* (1971) 21 Cal.App.3d 551, 557.)"  (*Alejo v. Torlakson* (2013) 212 Cal.App.4th 768, 779-780.)

**II.     Even Assuming the Claims Were Timely Filed, the Record Supports the Reasonable Inferences That Lin's Signatures Were Forged and, Therefore, the Claims Were Not Properly Filed by, or on Behalf of, Lin**

Based on County's discovery responses, Breitman contends County has conceded that the claims were timely filed.  Assuming that is true, we nevertheless conclude the evidence supports the reasonable inferences that Lin's signatures were forged and, therefore, the claims were not properly filed by, or on behalf of, Lin.

The trial court was presented with the following evidence that Lin's signatures on the claims and assignment forms were forged:  (1) the forms contained driver's license and passport numbers that did not belong to Lin; (2) in Lin's notarized letter of May 2010, she expressly disavowed her purported signatures as fraudulent; and (3) Lin provided County with copies of her driver's license and passport, which did not match the identifying information provided on the forms that were purportedly filed by her.

We conclude the above evidence supports a reasonable inference that Lin's signatures on the claim and assignment forms were forged.  This leads us to the further conclusion that the purported assignments were invalid.  Section 4675, subdivision (b) provides that a party of interest's rights may be assigned "only by a dated, written instrument" that meets the statutory requirements.  Because the evidence supports a reasonable inference that Lin's signatures on the assignment forms were forged, the assignment forms did not comply with the statutory requirements.  Under section 4675, subdivision (b), the attempted assignments were therefore invalid.

Breitman's reliance on Nicoletti's November 29, 2010 letter is misplaced. According to Breitman, the letter "ratified and approved" the claims by (1) apprising County of the settlement agreement, and (2) providing the identification documents that

9

established Lin's identity as the prior owner of the properties. We disagree. In our view, Nicoletti could not validate the claims and attempted assignments that, due to the forgery of Lin's signatures, were invalid. Section 4675 does not allow such a result. As County states in its respondent's brief: "The real Polly Lin never filed a timely claim nor timely assigned her right to claim excess proceeds before the deadline in section 4675. If the County were to distribute the excess proceeds to the Appellant, the statute of limitations would be rendered meaningless. Any person could find an individual with the same name as a party of interest and file [a] 'place holder' to meet the statute of limitations deadline. Then, the real claimant, who never filed a timely claim would be located and receive the excess proceeds. Such a rule would encourage fraudulent activity and make a cruel mockery of the excess proceeds claims process."

Finally, we note that if we were to view the November 29, 2010 letter as a new claim, we would necessarily deem the claim to be untimely because it was not filed within a year of the recordation of the tax collector's deed to the purchaser. (§ 4675, subd. (a).)

**III. The Evidence Does Not Support Breitman's Theory of Equitable Estoppel**

Breitman raises two equitable estoppel arguments on appeal. He contends that County should be barred from denying the claims because (1) its forms were ambiguous, which caused them to be filled out incorrectly, and (2) he settled his breach of contract action in reliance on Moore's purported statement that the payments had been approved. We conclude the evidence fails to support a theory of equitable estoppel.

*A.  Elements of Equitable Estoppel*

"To establish a claim of estoppel against the government a litigant must prove the same four elements as make up a cause of action for equitable estoppel against a private party as well as a fifth element which applies only to government. The first four elements are: '(1) the party to be estopped must be apprised of the facts;

"'(2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended;

"'(3) the other party must be ignorant of the true state of facts; and

"'(4) he must rely upon the conduct to his injury.'  (*Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297, 305.)

"The fifth element requires the plaintiff to demonstrate that the injury to his personal interests if the government is not estopped exceeds the injury to the public interest if the government is estopped.  Thus an estoppel will not be applied against the government if to do so would effectively nullify 'a strong rule of policy, adopted for the benefit of the public, . . .'  (*County of San Diego v. Cal. Water, etc., Co.* (1947) 30 Cal.2d 817, 829-830.)"  (*La Canada Flintridge Development Corp. v. Department of Transportation* (1985) 166 Cal.App.3d 206, 219.)

## B.    The Forms Were Not Ambiguous

Without citing any evidence in the record, Breitman argues that Pacific Holdings' principal, Arthur Parisi, mistakenly entered his own driver's license and Social Security numbers on the forms because he "was not experienced in filling out Assignment and Claim forms and no specific instructions were given to him on filling out the Claim forms."  The contention is unpersuasive.

The instructions on the back of the claim form explicitly stated that the party of interest was to "complete numbers [1] through [11] on the reverse of this form."  Accordingly, it was clear from the claim form that numbers [1] through [11] were to be filled in with the *party of interest's* name, address, telephone number, Social Security number, and driver's license number.

Similarly, the assignment form was not ambiguous.  It was clear that the information requested on the form (address, telephone number, Social Security number, and driver's license number) pertained to the party of interest, whose signature was required immediately beneath the requested information.

11

Given our determination that neither form was ambiguous, Parisi's failure to provide Lin's identifying information was suspicious. If Parisi completed the forms on Lin's behalf, he presumably would have entered Lin's identifying information on the forms as required by the instructions. His failure to do so reasonably suggests that he completed the forms without Lin's knowledge and consent, which means the attempted assignments were invalid. Lin's letter of May 2010, stating that her signature had been forged, supports this conclusion.

> C.      *There Is No Evidence That Moore Told Breitman the Claims Had Been Approved*

As a separate basis of estoppel, Breitman argues he was told by Moore that "the claim was approved, but . . . the only issue was to whom the check would be paid. Based on this statement, Appellant settled his dispute with LIN. Had Ms. Moore stated that the claim was not finally approved, and that it could still be denied, Appellant would not have settled his claims." We are not persuaded. Breitman has failed to show there was substantial evidence to support his contention that the alleged statement was made.

There are several other flaws in the estoppel theory. For example, when Moore allegedly made the statement, County had not completed its investigation of the claims and had not received Lin's letter disavowing the claims as fraudulent. Accordingly, neither County nor Moore was apprised of the facts when the purported statement was made. In addition, when Breitman's email is read in conjunction with Moore's email, it is clear the topic of discussion was whether there were two claimants—Lin *and* Pacific Holdings—or only one—Pacific Holdings by way of assignment. Moore's email stated that further research was necessary: "While I did advise the Excess Proceeds Unit that they could send the warrant to your address, payable to Polly Lin and Pacific Holdings, that advice did not mean that they could just order the warrant if their research was incomplete." Accordingly, the record fails to indicate that Moore intended for her purported statement to be acted upon, or that she acted in a manner that justified a belief that it was so intended.

12

## IV.    Remaining Arguments

In his remaining arguments, Breitman contends:  (1) County's decision was made without due regard for his rights; (2) County's actions were arbitrary and capricious; (3) County's explanation of its decision was inadequate; (4) County's investigation of the claims was inadequate because County failed to question either Parisi of Pacific Holdings or the notary who notarized Lin's signatures on the claim and assignment forms; (5) County failed to provide the written rules, policies, or procedures for its claims verification process; and (6) County's characterization of Nicoletti's November 29, 2010 letter and supporting documents as a new claim was arbitrary and capricious.

Based on our independent review of the record, we conclude that the above arguments lack merit.  As we previously stated, County's denial of the claims was supported by substantial evidence, which indicates that, contrary to Breitman's contentions, County acted in accordance with the statutory requirements and properly exercised its discretion.  The remaining errors that Breitman contends were committed by County appear to be nothing more than an erroneous attempt to shift the burden on appeal from the appellant to the respondent.  We conclude that Breitman has failed to meet his burden on appeal of establishing the existence of reversible error.

### DISPOSITION

The judgment is affirmed.  Respondent is entitled to costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

SUZUKAWA, J.

We concur:

EPSTEIN, P. J.                              MANELLA, J.

13